In re DIOCESE OF BISMARCK TRUST (Created by the Last Will and Testament of T. Clem Casey, Deceased.)

DIOCESE OF BISMARCK, Respondent and Appellant,

v.

Myron H. ATKINSON, Jr., and First Trust Company of North Dakota, N.A., Former Co–Trustees Petitioners and Appellees.

Civil No. 960040.

Supreme Court of North Dakota.

Sept. 12, 1996.

Dwight C.H. Kautzmann, Bismarck, for respondent and appellant.

Kermit E. Bye of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Fargo, for petitioners and appellees.

NEUMANN, Justice.

The Diocese of Bismarck appeals from an order denying its motion to expunge a pretrial brief and appendix from the district court's record. We affirm the district court's ruling.

In 1969, T. Clem Casey executed his Last Will and Testament. Article VI of the Last Will and Testament created the Diocese of Bismarck Trust. In 1970, T. Clem Casey died. Under the terms of his Will, the co-trustees, Myron Atkinson and First Trust Company of North Dakota, were directed to pay funds to the governing board of the Diocese of Bismarck for capital improvements of Bismarck's parochial school facilities.

In 1990, a dispute arose between the co-trustees and the Diocese of Bismarck concerning the construction of the trust's terms. In 1991, the parties entered into a settlement agreement. As part of that settlement agreement, the trust was placed under the supervision of the district court according to N.D.C.C. Chapter 59–04. The district court has held annual hearings at which the court has reviewed and approved the trust's annual accounting.

In 1994, another dispute arose between the parties concerning proper use of the trust's funds. As a result, the co-trustees moved to amend the 1991 settlement agreement. The parties conducted discovery and filed additional motions. The district court scheduled

a hearing for September 18, 1995. In preparation for the hearing on the pending motions, the co-trustees prepared a prehearing brief with a related appendix.

On September 18, 1995, the day originally scheduled for the hearing, the parties reached a verbal agreement that was read into the record. On September 29, 1995, the co-trustees delivered their prehearing brief and a proposed order confirming the verbal agreement to the district court and to the Diocese. On October 3, 1995, the district court filed the brief.

On October 2, 1995, the Diocese signed the written settlement agreement. Four days after signing the written settlement, the Diocese moved the district court to reject the co-trustees' brief. On December 15, 1995, the district court issued its order confirming the verbal agreement and denying the Diocese's motion to reject the brief.

The Diocese appeals the district court's refusal to expunge the brief. Its argument focuses on three main issues. First, the Diocese argues the district court violated Rule 5(d)(1), N.D.R.Civ.P., by improperly allowing the brief, accompanied with discovery materials, to be filed. Second, it argues the court violated Rule 5(d)(2), N.D.R.Civ.P., by accepting the brief two weeks after the trial had been canceled. Finally, the Diocese argues the court erred by allowing the brief to be filed without first being scrutinized under the North Dakota Rules of Evidence.

 A trial court's order refusing to expunge filed documents will not be disturbed unless this court finds the district court abused its discretion in accepting the documents. *Cf. Smith v. State*, 389 N.W.2d 808, 812 (N.D.1986) (reviewing a court's decision to grant a protective order and deny a discovery request under an abuse of discretion standard). An abuse of discretion is never assumed; the burden is upon the party seeking relief to affirmatively establish it. *Mertes v. Walberg*, 548 N.W.2d 378, 380 (N.D.1996). We do not consider the trial court's acceptance of this prehearing brief and appendix to be an abuse of discretion.

 The prehearing brief and appendix filed by the co-trustees contained copies of documents concerning the trust, and other materials including letters, minutes from meetings, memos, a deposition and spreadsheets. The North Dakota Rules of Civil Procedure do not prohibit most of these materials from being filed but because some discovery material was included in the appendix, Rule 5(d)(1), N.D.R.Civ.P., is applicable. The relevant section of Rule 5(d)(1) of the North Dakota Rules of Civil Procedure states:

> "A party may not file discovery materials with the clerk unless the materials are to be submitted to the court for disposition of a pending motion, the court orders them to be filed, or a party certifies that the filing is necessary for safekeeping of the papers or exhibits pending completion of the case."

According to the explanatory note of Rule 5(d)(1), N.D.R.Civ.P., the purpose of limiting the filing of discovery materials is to alleviate storage problems. Therefore, Rule 5(d)(1), N.D.R.Civ.P., does not provide a blanket ban on the filing of discovery materials, but rather, gives the court discretion in accepting discovery documents as outlined in the rule.

Here, the co-trustees offer two reasons for submitting the brief. First, the co-trustees contend they filed the brief as a reference point for any future controversies concerning the trust. Second, they explain the brief was filed to help guide the district court in assessing attorney fees that, at the time the brief was filed, remained to be confirmed.

The trial court did not provide an exact reason for its decision, but the court's order refusing to expunge the brief could reasonably fall under the second or third exception in Rule 5(d)(1), N.D.R.Civ.P. Under the second exception, the district court has the discretion to order discovery materials filed. Although in this case the court did not originally order the brief to be filed, the court did order the brief to remain filed, essentially satisfying this exception. In addition, the co-trustees filed the brief to ensure the information would be available for future reference. This suggests the co-trustees saw a need for the documents to be filed for the purposes of safekeeping. Although the co-trustees did

not officially certify to the court that safekeeping was necessary, the court could have interpreted the need for safekeeping and refused to expunge the materials based on this reason. Because one could reasonably argue the brief was filed under a court order or for the purposes of safekeeping the materials, the court has not abused its discretion by refusing to expunge the brief under Rule 5(d)(1), N.D.R.Civ.P.

The Diocese's second argument, that accepting the brief two weeks after the settlement violates Rule 5(d)(2), N.D.R.Civ.P., is also unfounded. Rule 5(d)(2), N.D.R.Civ.P., provides that all documents "designed to be used upon the hearing of a motion ... shall be filed at least 24 hours before the hearing unless otherwise directed by the court." Although the district court scheduled a hearing on September 18, 1995, no hearing actually took place. Instead, the parties met with the judge and reached a verbal settlement agreement. The co-trustees filed the prehearing brief after they reached a settlement, for those reasons already stated, not for use at a hearing. Therefore, the twenty-four-hour period in Rule 5(d)(2), N.D.R.Civ.P., is inapplicable. Notwithstanding this, even if the time deadline were applicable, Rule 5(d)(2), N.D.R.Civ.P., gives the court discretion to direct when materials may be filed. If the district court decided to file the brief two weeks after the trial was canceled, we see no reason to tell the court it cannot.

Also relevant to our decision here is N.D.C.C. § 59–04–17. In 1991, the Diocese of Bismarck Trust was placed under the supervision of the district court under N.D.C.C. Chapter 59–04. According to N.D.C.C. § 59–04–17:

"The court, at anytime and upon its own motion, or upon good cause shown by a petition of any beneficiary, and with or without notice, may require and compel the trustee to file a special itemized account, or report of any acts done, or acts contemplated by the trustee in the disposition or investment of the trust."

When supervising a trust, a court has broad authority to order or accept materials it believes should be filed with the court. Although the court did not order a report by the trustee, the court had the supervisory power to do so. In the situation at issue, where a report was voluntarily filed which the court has decided to retain, the court's supervisory authority permits such action.

The Diocese's third contention suggests the district court erred because the filed brief makes the material accessible to the public without first being scrutinized under the Rules of Evidence. The Diocese asserts it should have had the opportunity to cross examine and object to any information before the court filed the brief. But again, the Diocese misconstrues the law. The district court merely filed the documents, it did not accept the documents into evidence. Documents do not have to comply with the Rules of Evidence in order to be filed with the district court. If either party wishes to use the brief in court in future litigation, the information will have to be admissible under the Rules of Evidence like any other exhibit. Until that time, the Diocese has not been denied a substantial right by not being allowed to object to the information in the brief.

Even if the court had abused its discretion by allowing the briefs to be improperly filed, according to the doctrine of harmless error under Rule 61, N.D.R.Civ.P., we are mandated not to disturb the order unless we find that "refusal to take such action appears to the court inconsistent with substantial justice." The Diocese has failed to present any evidence that the filing of the brief affects the substantial rights of any of the parties. Any error that might exist is, therefore, harmless.

Finally, though the Diocese has argued otherwise, we see no harm in filing the brief and placing the material on public record. This is a charitable trust created for the advancement of education. *Restatement (Second) of Trusts* § 370 (1959). A charitable trust differs from a private trust in significant ways. Unlike a private trust, which is created to favor ascertainable beneficiaries, a charitable trust is devoted to purposes beneficial to the community. Austin W. Scott, William F. Fratcher, The Law of Trusts, § 348, at 8 (4th ed. 1989). A charitable trust is, therefore, a matter of public concern. In

matters where the public interest is at issue, courts have generally found there to be a compelling interest in disclosing information not ordinarily available to the public. *See In Re "Agent Orange" Product Liability Litigation,* 821 F.2d 139, 148 (2nd Cir.1987) (altering a settlement agreement, in which the parties agreed to seal discovery from public access, due to the public interest in the litigation).

Also unique to a charitable trust is that it is enforceable by the Attorney General or any other person who has a special interest in the trust, N.D.C.C. § 59–04–02, and that it continues for an indefinite or unlimited period of time. *Restatement (Second) of Trusts* §§ 391 & 365 (1959). Consequently, parties involved and interested in the trust extend beyond the immediate parties and will change over time. In consideration of the public interest at stake and the ongoing nature of a charitable trust, there is a good reason for documents related to the trust to be on public file.

Affirmed.

SANDSTROM, Acting C.J., NEUMANN, MARING and MESCHKE, JJ., and DONALD L. JORGENSEN, District Judge, concur.

DONALD L. JORGENSEN, District Judge, sitting in place of VANDE WALLE, C.J., disqualified.