# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 3, 2005 Session

## SARA H. FISCHER v. THE ELDON STEVENSON, JR. SCHOLARSHIP FUND TRUST

### Direct Appeal from the Chancery Court for Davidson County
#### No. 03-1020-I     Claudia Bonnyman, Judge

---

### No. M2004-00352-COA-R3-CV - Filed August 22, 2005

---

This appeal arises from a trial court's order granting Appellee's motion which was labeled a motion to dismiss but treated as a motion for summary judgment. The trial court determined that Appellant lacked standing to bring her cause of action, and, alternatively, was barred from bringing her claim by the doctrine of collateral estoppel. Appellant seeks review by this Court, and, for the following reasons, we affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

C. Bennett Harrison, Jr.; Nashville, TN;  Dan Warlick, Nashville, TN, for Appellant

C. Eric Stevens, Nashville, TN; Sean P. Scally, Nashville, TN, for Appellee

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Janet M. Kleinfelter, Senior Counsel, Nashville, TN, for Intervening Defendant/Appellee Attorney General Paul Summers

## OPINION

## Facts and Procedural History

By a codicil to his last will and testament, Eldon Stevenson, Jr. ("Stevenson") included provisions later construed to create the Eldon Stevenson, Jr. Scholarship Fund Trust ("Appellee" or "Trust"). Stevenson died in 1972. The provision at issue in the codicil to his will provided as follows:

> (2) I revoke the provision in Article V of my will that at the death of my wife, Sarah S. Stevenson, the corpus of the trust therein established be distributed to the Eldon Stevenson, Jr. Foundation, Inc., a Tennessee corporation, and I direct instead that said corpus be distributed to The Vanderbilt University, to be added to the Eldon Stevenson, Jr. Fund at the University, created by agreement of June 30, 1956, these additions to said Fund to be administered as follows:

> . . . .

> > (c) The remaining income [20%] shall be used for the payment of scholarships to students in the College of Arts and Science, same to be awarded to sons or daughters of employees, or deceased employees, of the National Life and Accident Insurance Company,[1] and to be known as Eldon Stevenson Scholarships; but should a system of scholarships for higher education be established by some government agency or otherwise, which, in the opinion of the committee hereinafter designated, make these scholarships no longer needed, said income shall be used for the support of the scientific work of the Stevenson Center for the Natural Sciences.

> > In the investment of said additions to the Eldon Stevenson, Jr. Fund, and in the use of the income for the purposes designated, the University shall follow the directions of a committee composed of the chief executive officer of NLT Corporation, the chief executive officer of National Life and Accident Insurance Company and the president of the Board of Trust of Vanderbilt University. . . . Said committee may vary the percentages above specified as well as the number of professorships and scholarships, and the amounts to be paid with respect to each, all as changing conditions and circumstances may in their judgment warrant, but at all times maintaining reserves which are sufficient in their judgment to insure adequate physical maintenance and preservation of the Stevenson Center for the Natural Sciences.

---

[1] American General Life and Accident Insurance Company ("American General") became National Life and Accident Insurance Company's successor in interest.

The NLT Corporation dissolved at a point not stated in the record. Subsequently, by an agreed order entered in January 1987 upon a petition filed by Vanderbilt University ("Vanderbilt"), the Chancery Court construed Stevenson's codicil creating the scholarship awards as follows:

> That the provision in the governing language for scholarships for sons or daughters of employees, or deceased employees, of the National Life and Accident Insurance Company be construed as applying to scholarships in the College of Arts and Science or other schools of Vanderbilt University for the sons or daughters of active employees, or deceased employees, of the American General Life and Accident Insurance Company (formerly The National Life and Accident Insurance Company). These scholarships will be administered by the Financial Aid Office of Vanderbilt University under guidelines to be approved by the Chancellor of Vanderbilt University and a committee composed of the chief executive officer of the American General Life and Accident Insurance Company and the president of the Board of Trust of Vanderbilt University.

Bruce Fischer ("Mr. Fischer") was employed with American General from December 1993 until his termination in February 1999. In the fall of 1998, his daughter, Sara Fischer ("Ms. Fischer" or "Appellant"), applied for and obtained early admission with Vanderbilt. American General certified to Vanderbilt that Ms. Fischer was the daughter of an employee with American General and eligible for the Trust's scholarship to Vanderbilt's College of Arts and Science. In January 1999, Mr. Fischer was notified by American General that he was being terminated from his position with American General. While being represented by counsel, Mr. Fischer entered into an agreement and release which made no representations concerning Ms. Fischer's continued eligibility for the Trust's scholarship. Additionally, the agreement stated as follows:

> 12. <u>Full Settlement and Release</u>. Fischer hereby agrees that this Agreement and Release represents a full and final settlement of any and all claims and causes of action which he may have against the AG Companies and their respective directors, officers, agents, employees, and attorneys arising from the employer-employee and related relationships terminated by this Agreement and Release. Fischer hereby releases and forever discharges said persons and their successors and assigns from all actions, judgments, damages, claims, and demands whatsoever, in law or in equity, arising from said relationships which Fischer, his heirs, legal representatives and assigns may have or could assert against said companies and persons, including, but not limited to, any and all claims and causes of action under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, as amended, the Age Discrimination in Employment Act, as amended, the Tennessee Fair Employment Practices Law, as amended, and all similar laws of the United States and any state or local jurisdiction. . . . Fischer acknowledges that he has reviewed the provisions of this Agreement and Release to his full satisfaction, *that it represents the complete negotiated agreement between the parties*, that AGLA has advised him to consult with an attorney of his choice regarding the provisions of this Agreement

and Release, that he has been given a period of at least twenty-one (21) days in which to consider all of its terms and conditions, and that he executes this Agreement and Release freely and voluntarily.

(emphasis added). The agreement called for Mr. Fischer's termination effective February 26, 1999. Subsequently, by letter dated April 22, 1999, American General informed Mr. Fischer that Ms. Fischer was approved for the Trust's scholarship for studies at Vanderbilt. The letter further stated:

The Stevenson Scholarship award will be for full tuition, fees and books. This scholarship award is *for the 1999 school year. To be eligible for a scholarship, the following or any succeeding year, you must meet the eligibility guidelines then in effect.* Those guidelines are currently being reviewed. We will send you a copy of the guidelines, as revised, by the end of this school year.

(emphasis added). The guidelines were revised as of October 7, 1999, by the Trust's committee ("Committee") which was created in the codicil for Stevenson's will and later modified by the Davidson County Chancery Court in 1987. The Committee added the following requirement for the annual renewal of the scholarship: "The recipient has a parent who is an active employee of the company (or is deceased), or the parent has retired from the company after the date the recipient was initially awarded a Scholarship. . . ." American General notified Ms. Fischer by letter dated April 7, 2000, that she was not eligible to receive the Eldon Stevenson, Jr. Scholarship from the Trust for the next school year because her father, Mr. Fischer, was no longer an active employee with American General.

In April 2000, Mr. Fischer brought an action against American General seeking an injunction ordering American General to certify Ms. Fischer's eligibility for the Trust's scholarship award. Mr. Fischer and American General agreed to stay the proceedings pending an arbitration of the matter in July 2000. After hearing the proof of American General and Mr. Fischer, the arbitrator concluded that Mr. Fischer was not entitled to relief. On April 7, 2003, Ms. Fischer filed a petition for declaratory judgment and damages against the Trust, seeking a favorable interpretation of Stevenson's codicil and reimbursement for all funds expended due to the alleged wrongful withdrawal of her scholarship.[2] On May 27, 2003, the Trust filed a Motion to Dismiss along with supporting affidavits and documents. By order, the trial court determined that, because it was considering matters outside the pleadings, it would treat the Trust's motion as a motion for summary judgment. Tenn. R. Civ. P. 12.03 (2005). Ms. Fischer, after filing a response, filed a motion for summary judgment on August 28, 2003. On October 1, 2003, the Tennessee attorney general moved to intervene, and the trial court granted this motion on October 27, 2003. After considering all of the evidence before it, the trial court entered an order on December 30, 2003, wherein it ruled that Ms. Fischer lacked standing to bring her claim, and, alternatively, if Ms. Fischer had standing, she

---

[2] It appears in the record that the Committee, upon Ms. Fischer's request, awarded Ms. Fischer a scholarship for the 2002-2003 academic year.

would be barred from bringing her action by the doctrine of collateral estoppel. Additionally, the lower court denied Ms. Fischer's motion for summary judgment. Ms. Fischer now appeals and presents the following issues for our review:

I.  Whether the trial court erred when it granted Appellee's motion for summary judgment concluding that Appellant lacked standing and her claim was barred by the doctrine of collateral estoppel; and

II.  Whether the trial court erred when it denied Appellant's motion for summary judgment.

For the following reasons, we affirm.

**Standard of Review**

This appeal concerns a trial court's ruling on motions for summary judgment. Our supreme court has previously articulated the standard by which we review appeals of orders on summary judgment:

In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the question should be considered in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, i.e., the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991); *Poore*, 666 S.W.2d at 49; *Dunn*, 833 S.W.2d at 80; *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 279 (Tenn. App. 1977); *Taylor*, 573 S.W.2d at 480. Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied. *Poore*, 666 S.W.2d at 49 ("If the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact it is its duty to overrule the motion."); *Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. App. 1990). The court is not to "weigh" the evidence when evaluating a motion for summary judgment. *See Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 389 (Tenn. 1986) ("Summary judgment is not ordinarily the proper procedure for determining whether a prima facie case has or has not been overcome by countervailing evidence."); *Rollins v. Winn Dixie*, 780 S.W.2d 765, 767 (Tenn. App. 1989). The court is simply to overrule the motion where a genuine dispute exists as to any material fact. *Dunn*, 833 S.W.2d at 80; *Dooley*, 805 S.W.2d at 383. The phrase "genuine issue" contained in Rule 56.03 refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts. *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 929 (Tenn. App. 1984). The critical focus is limited to facts deemed "material", *Evco*, 528 S.W.2d at 24-25, which is to say those facts that must be decided in order to resolve the substantive claim or defense at which the motion is directed. *Knoxville*

*Traction Co. v. Brown*, 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905); *Rollins v. Winn Dixie*, 780 S.W.2d 765, 767 (Tenn. App. 1989); *Schwarzer*, 139 F.R.D. at 476.

Moreover, the cases make clear that the party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law. *See, e.g., Downen*, 811 S.W.2d at 524; *Jones v. Home Indem. Ins. Co.*, 651 S.W.2d 213, 214 (Tenn. 1983); *Williamson Cty. Broadcasting v. W. Cty. Bd. of Ed.*, 549 S.W.2d 371, 372 (Tenn. 1977); *Taylor*, 573 S.W.2d at 480; *Lucas Brothers v. Cudahy Co.*, 533 S.W.2d 313, 316 (Tenn. App. 1975). Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978); *Merritt v. Wilson Cty. Bd. of Zoning Appeals*, 656 S.W.2d 846, 859 (Tenn. App. 1983). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment . . . shall be entered against him." Rule 56.05. If the motion is denied, the moving party "has simply lost a preliminary skirmish and must proceed to trial." *Williamson*, 549 S.W.2d at 372.

*Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993).

**Standing**

Appellant argues that the trial court erred when it granted Appellee's motion for summary judgment on the basis that Appellant lacked standing. We begin by noting that Tennessee courts have yet to address this particular set of circumstances. However, after examining other jurisdictions, it appears the general rule concerning who may enforce a charitable trust is stated in the Restatement 2d of Trusts:

A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest or by the settlor or his heirs, personal representatives or next of kin.

Restatement 2d *Trusts* § 391 (1959); *see e.g. Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 91 P.3d 1019, 1025 (Ariz. Ct. App. 2004); *Carl J. Herzog Found. v. Univ. of Bridgeport*, 699 A.2d 995, 999 (Conn. 1997); *Warren v. Bd. of Regents of the Univ. Sys. of Ga.*, 544 S.E.2d 190, 192-93 (Ga. Ct. App. 2001); *Greenway v. Irvine's Trustee*, 131 S.W.2d 705, 709 (Ky. Ct. App. 1939); *St. John's-St. Luke Evangelical Church v. Nat'l Bank of Detroit*, 283 N.W.2d 852, 858 (Mich. Ct. App. 1979); *First Camden Nat'l Bank & Trust Co. v. Hiram Lodge*, 35 A.2d 490, 493 (N.J. Ch. 1944); *Kania v. Chatham*, 254 S.E.2d 528, 530 (N.C. 1979); *Diocese of Bismarck v. Atkinson*, 553 N.W.2d 222, 224-25 (N.D. 1996); *Wiegand v. Barnes Found.*, 97 A.2d 81, 83 (Pa. 1953). Further, it has been generally held that a person with a mere possible or potential interest in a trust does not have a

"special interest" entitling him or her to maintain a suit for the enforcement of a trust. Restatement 2d *Trusts* § 391 cmt. c (1959). Finally, some courts have held that a prior beneficiary of a large class of potential beneficiaries in a trust does not hold a "special interest" entitling the former beneficiary to maintain a suit to enforce a charitable trust. *See e.g. Robert Schalkenbach Found.*, 91 P.3d at 1024-25.

Under the unique circumstances of this case, we agree with the trial court that Appellant lacked standing to bring an action. The guidelines in place at the time Appellant was awarded the scholarship from the Trust stated as follows:

> Renewal of a Scholarship depends solely upon the following:
> a. Performance of the Scholarship recipient,
> b. Recipient's relationship with Vanderbilt University, and
> c. *Discretion of the Eldon Stevenson Scholarship Committee*.

(emphasis added). The new guidelines which became effective October 7, 1999, state the following with regard to renewing a scholarship award:

> Renewal of a Scholarship depends solely upon the following:
> a. The recipient maintains satisfactory progress towards a degree;
> b. The recipient meets all requirements of the university for continued enrollment;
> c. The recipient has a parent who is an active employee of the company (or is deceased), or the parent has retired from the company after the date the recipient was initially awarded a Scholarship; and
> d. *The recipient meets any other requirements that may be established by the Eldon Stevenson Scholarship Committee, from time to time, within its sole discretion*.

(emphasis added). Additionally, the new guidelines provide that a scholarship award "may" be renewed on an annual basis. Under either set of guidelines established for the Trust, the award of the scholarship is within the discretion of the Committee for the Trust. Further, the set of guidelines effective when Appellant initially applied for the scholarship stated that the award is "in advance for one semester only. They may be renewed from semester to semester until graduation provided the student makes 'satisfactory' progress (as determined by Vanderbilt University) toward completion of degree requirements." The guidelines which became effective October 7, 1999, state that the scholarship may be renewed on an annual basis. Therefore, though Appellant was awarded a scholarship for her first year at Vanderbilt, under either set of guidelines governing the award of the scholarship, she was merely a potential beneficiary for the following years or semesters. The scholarship award's renewal was within the discretion of the Committee for the Trust, and Appellant was merely a potential beneficiary of a scholarship award for the years following her first year at Vanderbilt. We hold that, under the circumstances of this case, Appellant was a potential beneficiary only and did not have standing to file an action to enforce the Trust. *See* Restatement 2d *Trusts* §

391 cmt. c (1959). Therefore, we affirm the decision of the trial court granting summary judgment to Appellee.[3]

## Conclusion

For the reasons stated above, we affirm the decision of the trial court. Costs of this appeal are taxed to Appellant, Sara H. Fischer, and her surety for which execution may issue if necessary.

                                        _____

                                        ALAN E. HIGHERS, JUDGE

---

[3] Our disposition of this issue effectively pretermits all other issues in this appeal; therefore, we decline to discuss whether the doctrine of collateral estoppel applies or whether the trial court erred when it denied Appellant's motion for summary judgment.