# MT. OLIVET CEMETERY CO. v. THOMAS.—189 S. W. (2d) 1.

Middle Section.   January 22, 1944.

Petition for Certiorari denied by Supreme Court, May 6, 1944.

Armistead, Waller, Davis & Lansden, of Nashville, for Mt. Olivet Cemetery Co.

Richard Marshall and Elvin Woodroof, both of Nashville, for Mrs. Mary A. Thomas.

HICKERSON, J.  Mrs. Mary A. Thomas brought this suit against Mt. Olivet Cemetery Company to recover damages for personal injuries which she sustained when when she fell into a sunken grave.  She divided her declaration into a common law count and a statutory count and alleged in the common law count that the defendant was a Tennessee corporation and was engaged in the operation of a cemetery in Davidson County, Tennessee, for profit; her father and mother were buried in this cemetery; on July 23, 1940, she went to visit their graves and fell into a sunken grave; as a result she sustained serious injuries; and that the defendant company was liable to her in damages resulting from her injuries because it, "had negligently, carelessly, wilfully and wantonly allowed tall grass and other vegetation to grow over and completely cover the cemetery at said Strangers' Row, and over all of the graves, and the spaces and walkways between the same at and around the said graves in said Strangers' Row and especially all of the graves and the area surrounding same between said roadway and the graves of plaintiff's father and mother, as aforesaid"; and that it, "had also allowed a dangerous condition to exist in said cemetery at the location above described in that many of the graves had sunk and the

■■■■■■■■■

defendant had taken no steps to fill up said sunken graves, but had left the same sunken for a long period of time, same being sunken from one to two or more feet in depth below the level of the surrounding earth. In addition, the said grass and other vegetation had grown up, out and over said sunken graves, so that said holes caused by said sunken graves were completely hidden and covered, and completely invisible.''

In the second count of her declaration she adopted all of the averments of the first count and in addition alleged that the defendant failed and neglected to keep up, improve and beautify that part of its cemetery where the accident occurred in violation of Code Section 3923 of the 1932 Code of Tennessee.

The cemetery company pleaded the general issue of not guilty.

The case was tried by the court and a jury. At the conclusion of all the evidence the court directed a verdict in favor of defendant on the statutory count of the declaration; but submitted the case to the jury on the common law count. The jury returned a verdict in favor of plaintiff in the sum of $3,000. This verdict was reduced by the trial judge to $2,250 and judgment was entered thereon.

Plaintiff and defendant perfected appeals in the nature of writs of error to this Court.

Plaintiff has assigned one error: that the trial court erred in directing a verdict in favor of defendant on the statutory count of her declaration.

Three questions are raised by defendant's assignments of error: (1) that the trial court erred in refusing to direct a verdict in favor of defendant on the common law count of plaintiff's declaration; (2) that the verdict was excessive; and (3) the court erred in the charge to the jury.

We shall first dispose of the assignments of error filed in behalf of the defendant.

There is no controversy about the material facts: the cemetery was chartered by a special act of the General Assembly of Tennessee, being Chapter 192 of the Acts of 1855. The charter provided that the corporation, "may establish such by-laws, rules and regulations as they may deem proper, for the government of said corporation: Provided, that the same shall be consistent with this charter, and the laws of this State, and the constitution and laws of the United States."

The charter further provided: "That it shall be the duty of said corporation to set apart from ten to twenty-five per cent of the proceeds of the sale of lots, to constitute a fund to be denominated 'Improvement fund,' until it shall amount to fifty thousand dollars, which shall be loaned out by the Board of Directors, and the interest used in the improvements and decorations on the grounds."

Pursuant to these charter provisions the cemetery company issued rules and regulations which were in force at the time the accident which is the basis of the present suit occurred. These rules and regulations provided: "Section 27. All work on lots will require authority from the lot owner." "Section 67. Lots are private property and must not be invaded."

The corporation, also, set up a trust fund of $50,000, the income from which was used to improve and care for the cemetery grounds. The company spent much more than this income from the $50,000 in caring for the cemetery.

The cemetery grounds consisted of 315 acres of land. Over 50,000 people are buried there; the burials being at the rate of more than 600 a year. The owners of the

particular lots pay for any special attention to the lot. The father and mother of plantiff were buried in the section of the cemetery where single lots are sold. In that section the graves are arranged in rows with 18 inches between the graves and 24 inches between the rows. Graves throughout the cemetery are constantly sinking. This condition is caused by the collapse of the boxes or coffins, which are put into the graves, and by the fact that it is impossible to pack the dirt back into the grave as solidly as it was when it was taken out.

About 15 or 25 negro men are employed by the cemetery company all the time to wait on funerals, dig the graves, cut grass, rake leaves and generally improve the cemetery grounds.

In this single grave section of the cemetery there is no room to use a lawn mower to cut the grass and vegegation. It has to be cut with blades.

The father of plaintiff was buried in this section of the cemetery in 1911. His grave had become sunken and plaintiff had paid the cemetery company $1.75 to have his grave filled.

Her mother was buried in this section of the cemetery in March, 1940, although not immediately adjacent to the grave of her father. Her father's grave was seven to ten rows back from her mother's grave. When her mother was buried plaintiff visited her father's grave and observed that a large number of graves in that general area were sunken, some of them waist-deep. Being in the early spring she could see the general conditions because there was no vegetation. One or two of these sunken graves were near the lot where her mother was buried.

After the burial of her mother in March 1940, plaintiff again visited her mother's grave in July 1940, when

she was injured. While going along the path or walkway between the graves the left foot of plaintiff fell into a sunken grave and she received injuries for which she sued in this case. The grass and wild honeysuckle had grown up about knee-high in this part of the cemetery. It was impossible to see where some of the graves were located. Plaintiff testified:

"Q. Well, was there so much thicket that you couldn't tell where you were going? A. I couldn't see where; I could just walk along and guess at it.

"Q. Now, the reason you put your foot in the head of the grave is that it was grown up to such an extent that you couldn't see where the grave began and the path ended? A. Yes, sir, that is right."

█ Lot owners, and visitors in a cemetery are invitees of the cemetery company and it is the duty of the company to keep the premises in a reasonably safe condition for such visitors. Cedar Hill Cemetery v. Ball, 64 App. (D. C.) 336, 78 F. (2d) 220.

█ Actions against cemetery companies based upon negligence are governed by the same rules as if such actions were brought against any other defendant; and generally the negligence of the company and the contributory negligence of plaintiff are questions of fact for the jury. 14 C. J. S., Cemeteries, p. 89, sec. 29.

In Bejach v. Colby, 141 Tenn. 686, 693, 214 S. W. 869, 871, the Court held: "If the plaintiff were guilty of negligence which directly and proximately contributed to bring about the injury, it would make no difference whether that negligence was slight or gross, he could not recover. If, however, such negligence did not directly contribute to bring about the injury, the plaintiff can recover; the degree of negligence being immaterial, except in so far as it goes in mitigation of the damages."

Negligence and contributory negligence in this case are subject to the general rule on motions for directed verdict. Merriman v. Coca Cola Bottling Company, 17 Tenn. App. 433, 68 S. W. (2d) 149; Gargaro v. Kroger Grocery & Baking Co., 22 Tenn. App. 70, 118 S. W. (2d) 561; Nashville Bridge Company v. Hudgins, 23 Tenn. App. 677, 137 S. W. (2d) 327.

In Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197, 1199, plaintiff had ridden in an automobile with a drunken driver. The trial court directed a verdict in favor of defendant. In sustaining that action the Supreme Court said:

"We think the record discloses a case in which it appears 'that reasonable men, acting as the triers of the fact would find, without any reasonable probability of differing in their views, either that the plaintiff knew and appreciated the danger, or that ordinarily prudent men, under the same circumstances, would readily acquire such knowledge and appreciation.' See Stevens v. United Gas, etc., Co., 73 N. H. 159, 60 A. 848, 850, 70 L. R. A. 119; Gentzkow v. Portland R. Co., 54 Or. 114, 102 P. 614, 135 Am. St. Rep. 821.

"Such being the plight of the record, the trial judge did not err in holding as a matter of law that plaintiff was guilty of contributory negligence, barring his recovery."

In the present suit, the evidence shows without controversy: (1) that plaintiff knew about the sunken graves in the area where she was injured; (2) she appreciated the danger because she testified: "The grass was grown up knee-high, and this wild honeysuckle had all come out, and you had to watch every step to find where you were going, because I don't like to walk on the graves, and in order to keep in this path you have to look where you are going"; and (3) with this knowledge of the

sunken graves, and with this appreciation of the danger, plaintiff continued to walk in this section when she had to just guess at where she was going.

█ It is our opinion that the trial court erred in refusing to direct a verdict in favor of defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law which barred her recovery.

The first assignment of error is sustained.

With this view of the case it is not necessary for us to determine the other assignments of error filed in behalf of defendant.

█ We shall now consider the assignment of error filed in behalf of plaintiff to the effect that the trial court erred in directing a verdict in favor of defendant on the statutory count of plaintiff's declaration. Since we have determined that the trial court should have directed a verdict in favor of defendant on the ground of plaintiff's contributory negligence, the assignment of error filed in behalf of plaintiff becomes immaterial. The contributory negligence of plaintiff would defeat her recovery "even though the negligent act of defendant consisted in the violation of a statute or ordinance, and even though such violation is held to be negligence per se." 45 C. J. 980, sec. 532; Queen v. Dayton Coal, etc., Company, 95 Tenn. 458, 32 S. W. 460, 30 L. R. A. 82, 49 Am. St. Rep. 935; Griffin v. Dickerson, 4 Tenn. Civ. App. 409.

Wherefore, the result would have been the same had the trial court submitted the case to the jury on the common law count and the statutory count, because the contributory negligence of plaintiff would have barred her recovery on both counts. Therefore, we do not pass on the question presented by plaintiff's assignment of error, because it could not possibly affect the results of the case.

Judgment will be entered in this Court directing a verdict in behalf of defendant, and dismissing plaintiff's suit. All costs, including the costs of the appeal, are adjudged against plaintiff.

Felts, J., concurs.

Howell, J., did not participate.