**Mike Henry ROLLINS,**
**Plaintiff/Appellant,**

v.

**WINN DIXIE and John Maddox, Sr. and James D. Maddox, individually and d/b/a Pal's Package Store, Defendants/Appellees.**

**Charles R. FINLEY, by Duane E. FINLEY, Administrator of the Estate of Charles R. Finley, for the wrongful death of Charles R. Finley, Plaintiff/Appellant,**

v.

**WINN DIXIE and John Maddox, Sr. and James D. Maddox, individually and d/b/a Pal's Package Store, Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 22, 1989.

Permission to Appeal Denied by Supreme Court Nov. 20, 1989.

Paul D. Welker, Clarksville, for plaintiffs/appellants.

Paul North, Gail Vaughn Ashworth, North & Gideon, Nashville, for defendants/appellees.

## OPINION

KOCH, Judge.

This dram shop case stems from a fatal automobile accident in Clarksville. A surviving passenger and a deceased passenger's estate filed separate suits in the Circuit Court for Montgomery County against two businesses that sold intoxicating beverages to the driver and the passengers prior to the accident. The trial court granted the defendants motions for summary judgment, finding that the passengers were contributorily negligent because they were knowingly riding with an intoxicated driver. The plaintiffs have appealed, insisting that a genuine issue exists concerning the driver's intoxication and the passengers' knowledge of the driver's intoxication. We find no material factual dispute and, therefore, affirm the trial court.

### I.

The details of the events leading up to the accident giving rise to this lawsuit were supplied by the only two survivors. While the two accounts differ in several respects, they paint remarkably similar pictures of the events leading up to the accident in which three young men were killed.

Mike Rollins encountered Charles Finley at Clarksville High School on October 2, 1985 and offered to give him a ride to work. After picking up another friend, James Brown, they decided to drive to a nearby apartment shared by James Westmoreland and Paul "Pickle" Valesquez. On the way to the apartment, Mr. Finley noted prophetically that it was a "good day to die." They were joined at the apartment by John Overton who had also left school after his second period class. Having no particular plans, they decided to spend the day getting drunk and cruising around Clarksville.

Sometime prior to noon, Mr. Westmoreland and Mr. Rollins drove to Pal's Package Store where Mr. Westmoreland bought a fifth of bourbon. They returned to the apartment, and the group spent the next hour or so drinking the bourbon from the bottle. It made them feel "happy" and "under the influence" but not drunk enough, and so they decided to pool their money to buy some beer. Mr. Westmoreland borrowed Mr. Valesquez' car and, accompanied by Mr. Rollins, Mr. Brown, Mr. Finley, and Mr. Overton, drove to a Winn Dixie supermarket where he bought some food and two twelve-packs of beer.

The young men left the food at Mr. Westmoreland's apartment and then cruised around Clarksville, taking with them "party items" such as the beer, the remainder of the bourbon, and some marijuana. After stopping for gas and trying unsuccessfully to buy some more marijuana from Mr. Overton's cousin, they drove by the high school and the Two Rivers Mall and then drove up and down Madison Street and Riverside Drive several times. During the trip, they were drinking the beer, hanging out of the car windows, yelling, and having a good time.

The occupants of the car had more to drink as the afternoon wore on. By approximately three o'clock, Mr. Westmoreland, the driver, had consumed between a quarter and a half a bottle of bourbon and at least three beers. According to Mr. Overton, Mr. Westmoreland "wasn't only high. He was stoned," and he was driving "berserk," "like he wanted to get busted."

Mr. Finley asked to be taken home when Mr. Westmoreland stopped at a Minute Mart on Peacher's Mill Road. He was concerned that his parents would "come down pretty hard on him" if they found out how he had spent the day because he had just been released from an alcohol and drug treatment program at a local hospital. He and Mr. Overton had also realized that "we were going to wind up wrecking sooner or later that day" because of Mr. Westmoreland's driving.

The group decided to take Mr. Finley home and then drive to the high school to

pick up several of their girl friends. Less than a mile from the Minute Mart, Mr. Westmoreland crashed headlong into an oncoming car as he attempted to pass a school bus on a "snake curve" on Peacher's Mill Road. He was driving approximately eighty miles per hour at the time and was trying to get back into his own lane when the collision occurred. All the occupants of the car except Mr. Rollins and Mr. Overton were killed. Mr. Westmoreland's blood alcohol content was later determined to be .15%.[1]

In September, 1986, Mr. Rollins and Duane E. Finley, representing his son's estate, filed separate lawsuits against Pal's Package Store and Winn Dixie, alleging that they had illegally sold the bourbon and beer to Mr. Westmoreland because he was underage and that the sales proximately caused Mr. Finley's death and Mr. Rollins' injuries. The stores denied making illegal sales of alcoholic beverages and moved for summary judgments on the ground that Mr. Rollins and Mr. Finley had been contributorially negligent and had assumed the risk of riding with Mr. Westmoreland when they knew or should have known he was intoxicated. The trial court granted the motions and dismissed the cases, finding that Mr. Rollins and Mr. Finley were "guilty of gross contributory negligence as a matter of law."

## II.

The appellants take issue with the evidentiary support for the summary judgments in this case. They contend that they should not have been granted because genuine factual issues exist concerning whether Mr. Westmoreland was intoxicated and, if he was, whether Mr. Rollins and Mr. Finley knew or should have known about it.

## A.

A summary judgment proceeding is an efficient means to dispose of cases whose outcome depends solely on the resolution of legal issues. *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn.1981);

*Ferguson v. Tomerlin,* 656 S.W.2d 378, 382 (Tenn.Ct.App.1983). However, it should not replace a trial when disputed factual issues exist, *Jones v. Home Indem. Ins. Co.,* 651 S.W.2d 213, 214 (Tenn.1983), because its purpose is not to weigh the evidence, to resolve factual disputes, or to draw inferences from the facts. *Bellamy v. Federal Express Co.,* 749 S.W.2d 31, 33 (Tenn.1988); *Solomon v. Hall,* 767 S.W.2d 158, 162 (Tenn.Ct.App.1988).

Our task is to make a fresh determination concerning whether the party seeking the summary judgment has satisfied Tenn. R.Civ.P. 56.03's requirements that "there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." *Hill v. City of Chattanooga,* 533 S.W.2d 311, 312 (Tenn.Ct.App.1975). In doing so, we consider the pleadings and the proof in the light most favorable to the non-moving party, and we resolve all reasonable inferences in the non-moving party's favor. *Whitehead v. Dycho Co., Inc.,* 775 S.W.2d 593, 598 (Tenn.1989); *Blocker v. Regional Medical Center,* 722 S.W.2d 660, 660 (Tenn.1987).

Metaphysical doubts and disputes concerning the facts will not stand in the way of granting a summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, any reasonable doubt concerning the existence of a genuine issue of material fact will. *Poore v. Magnavox Co.,* 666 S.W.2d 48, 49 (Tenn.1984); *Executone of Memphis, Inc. v. Garner,* 650 S.W.2d 734, 736 (Tenn.1983). To be fatal to a summary judgment, the dispute must involve a "material fact"—a fact which relates directly to the claim or defense embodied in the summary judgment motion. To be material, a fact must be essential to the resolution of the legal questions that will ultimately decide the case. *Knoxville Traction Co. v. Brown,* 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905); *Fuller v. Tennessee–Carolina Transp. Co.,* 471 S.W.2d 953, 956 (Tenn.Ct.App.1970); C. Wright, A. Miller & M. Kane,

1. Tenn.Code Ann. § 55–10–408(b) (1988) establishes a presumption that a person is under the

influence if the amount of alcohol in the person's blood is .10% or more by weight.

*Federal Practice and Procedure* § 2725, at 89–95 (1983).

### B.

■ The appellants' theory of recovery is that Winn Dixie's and Pal's Package Store's sales of beer and liquor to Mr. Westmoreland were negligent *per se* because they violated the statutes proscribing sales of intoxicating beverages to persons under twenty-one years of age. However, one person's violation of a statute does not necessarily relieve another person of the duty to use due care to protect himself or herself. *Mt. Olivet Cemetery Co. v. Thomas*, 28 Tenn.App. 264, 271, 189 S.W.2d 1, 4 (1944); *Griffin v. Dickerson*, 4 Tenn. Civ.App. (Higgins) 409, 413–14 (1913).

■ Automobile passengers have a duty to use ordinary care to look out for their own safety. *Cole v. Woods*, 548 S.W.2d 640, 650 (Tenn.1977). They should refrain from riding in an automobile operated by an intoxicated driver. *Schwartz v. Johnson*, 152 Tenn. 586, 592, 280 S.W. 32, 33 (1926). Thus, this Court has held:

> As a general proposition, a guest-passenger is precluded from recovery for injuries sustained in an automobile accident where the intoxicated condition of the driver of the automobile in which [the passenger] was riding was a proximate cause of the accident, if the guest-passenger knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile.

*Harvey v. Wheeler*, 57 Tenn.App. 642, 646, 423 S.W.2d 283, 285 (1967).

The appellants contend that *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn.1981), placed Mr. Finley and Mr. Rollins beyond the general guest-passenger rule because they were under twenty-one years old. We do not construe the Tennessee Supreme Court's opinion to establish a ironclad rule that guest passengers who are less than twenty-one years old cannot be contributorially negligent if they knowingly ride in an automobile being operated by an intoxicated driver.

In our view, *Brookins* does not shield underage plaintiffs who bring dram shop actions from a contributory negligence defense. It simply applies the familiar rule that contributory negligence is determined by comparing the plaintiff's conduct with that of an ordinarily prudent person of similar age, knowledge, capacity, and experience. *Frady v. Smith*, 519 S.W.2d 584, 587 (Tenn.1974); *Hicks v. Herbert*, 173 Tenn. 1, 4, 113 S.W.2d 1197, 1198–99 (1938).

In *Brookins*, the Tennessee Supreme Court held only that a minor plaintiff's "capacity and judgment to act responsibly" with regard to the consumption of alcoholic beverages was a fact question and that, in the absence of proof establishing maturity and capacity, a minor's age alone is sufficient to create a jury question on the contributory negligence issue. *Brookins v. The Round Table, Inc.*, 624 S.W.2d at 550–51. Even under *Brookins*, underage purchasers of alcoholic beverages should bear the brunt of their own actions if they are familiar with the use of alcohol and with its effect on a person's judgment and conduct.

### C.

■ Winn Dixie and Pal's Package Store are entitled to summary judgments if the uncontested facts establish: (1) that notwithstanding their youth, Mr. Finley and Mr. Rollins were familiar with alcohol and with the effects of drinking alcohol; (2) that Mr. Westmoreland was intoxicated while he was operating the automobile; and (3) that Mr. Finley and Mr. Rollins knew or should have known that Mr. Westmoreland was intoxicated. Like the trial court, we do not believe that reasonable minds can differ on each of these points.

Neither Mr. Rollins nor Mr. Finley were strangers to the use of alcohol. Mr. Rollins, who was almost 20 years old when the accident occurred, had been drinking regularly since he was fifteen. He had been arrested for public drunkenness and driving under the influence and had lost his driver's license because of his DUI conviction. He had also been required to attend alcohol awareness classes and conceded

that he knew the affects of drinking alcohol on the ability to drive.

Mr. Finley was somewhat younger than Mr. Rollins and the other members of the group. Even though he was still in high school, he was part of the group that regularly consumed alcohol with Mr. Westmoreland. Shortly before the accident, he had been released from a hospital where he had been treated for alcohol and drug abuse. His representative introduced no evidence that he did not understand the effect of alcohol on a person's ability to drive a car. Since he was apparently over the age of fourteen at the time of the accident, the law presumes that he was capable of exercising care for his own safety as if he were an adult. *Learue v. State*, 757 S.W.2d 3, 8 (Tenn.Ct.App.1987).

Likewise, there can be no reasonable doubt that Mr. Westmoreland was intoxicated when the accident occurred. During the preceding four hours prior to the accident, he consumed between a quarter and a half a bottle of bourbon and at least three beers. He was driving erratically, and his blood alcohol content was high enough to raise the presumption that he was intoxicated.

Finally, the only reasonable conclusion to be drawn from the proof is that Mr. Rollins and Mr. Finley knew that Mr. Westmoreland was intoxicated. All the young men set out to get drunk that afternoon. They consumed large quantities of alcohol in each other's presence for at least three hours while they drove through the streets of Clarksville yelling and hanging out of the car windows. Mr. Rollins conceded that he knew Mr. Westmoreland was intoxicated when they stopped at a Minute Mart shortly before the accident. Likewise, both Mr. Rollins and Mr. Overton testified that Mr. Finley knew that Mr. Westmoreland was intoxicated. In fact, Mr. Overton testified that Mr. Finley was so concerned about Mr. Westmoreland's driving that he asked to be taken home.

The only reasonable conclusions to be drawn from the evidence are that both Mr. Rollins and Mr. Finley were familiar with the use of alcohol and with its effects on a person's ability to drive and that they were aware that Mr. Westmoreland was intoxicated shortly before the accident. Therefore, their decision to continue to ride with Mr. Westmoreland was contributory negligence which, as a matter of law, prevents them from recovering against either Winn Dixie or Pal's Package Store.

### III.

We affirm the summary judgments and remand the cases to the trial court for whatever further proceedings may be required. We also tax the costs of the appeal in equal proportions to Charles R. Finley and Mike Henry Rollins and their respective sureties or which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.