# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 8, 2010 Session

## TERESA L. WEAVER, ET AL. v. TRAVIS K. PARDUE, M.D., ET AL.

### Direct Appeal from the Circuit Court for Davison County
### No. 08C-2093     Amanda Jane McClendon, Judge

---

### No. M2010-00124-COA-R3-CV - Filed October 28, 2010

---

This appeal arises out of a primary care physician's alleged negligent and tortious treatment of a longtime patient. The trial court granted summary judgment in favor of the physician, questioning the credibility of the patient's allegations and holding in part that the physician's alleged conduct could not support a cause of action for intentional infliction of emotional distress. We reverse and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S. and J. STEVEN STAFFORD, J., joined.

Nanette Joan Gould, Nashville, Tennessee, for the appellant, Teresa L. Weaver.

Dixie W. Cooper, Nashville, Tennessee, for the appellee, Travis K. Pardue, M.D.

### OPINION

### I.  Background and Procedural History

The plaintiff/appellant, Teresa Weaver ("Patient"), filed this action along with her husband on June 30, 2008. Their complaint contained multiple allegations against the defendant/appellee, Travis K. Pardue, M.D. ("Doctor"), arising out of his conduct during scheduled medical visits on May 3, 2007; June 4, 2007; and July 26, 2007. The complaint first alleged that Doctor, who was Patient's primary care physician for more than ten years, committed intentional infliction of emotional distress ("IIED") when he abused his position

of trust and sexually assaulted Patient during each of the aforementioned visits.[1] The complaint further alleged that Doctor committed medical malpractice when he failed to accurately diagnose Patient, failed to accurately communicate his diagnoses to Patient, failed to accurately prescribe beneficial treatment for Patient, and failed to use the degree of care and skill required under the circumstances when treating Patient. The complaint went on to assert that Patient incurred significant impairments, injuries, and damages, which included emotional suffering and medical costs, as a result of Doctor's acts or omissions. Finally, the complaint alleged that Doctor's conduct caused Patient's husband to suffer a loss of consortium. The plaintiffs requested compensatory, punitive, and statutory damages; discretionary costs; attorney's fees; and any further relief to which they might be entitled.

On October 7, 2009, Doctor filed a motion for summary judgment supported by an affidavit, a memorandum of law, and a statement of undisputed facts. Doctor submitted that Patient's causes of action for malpractice and IIED arising out of events prior to June 30, 2007, were time-barred under the applicable statutes of limitations. Doctor further submitted that Patient's allegations of medical malpractice were meritless, citing a sworn affidavit detailing his treatments, diagnoses, and interactions with Patient on the dates in question. According to Doctor's affidavit, he at all times complied with the applicable standard of care when treating Patient and did not cause any injury to Patient that otherwise would not have occurred.[2] Patient's claim of IIED was equally meritless according to Doctor because his

---

[1]For the purposes of this opinion, we will employ the language of Patient's complaint and refer to the alleged unsolicited sexual touching as "sexual assault." We note, however, that our criminal courts would likely label the alleged acts, which are detailed herein, as the felony offense of "sexual battery." *See* Tenn. Code Ann. § 39-13-505(a)(2) (2010) (defining "sexual battery" in part as "unlawful sexual contact with a victim by the defendant . . . accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent").

[2]In addition to detailing the treatment provided to Patient, Doctor's affidavit states as follows:

2.  I earned my undergraduate degree from Middle Tennessee State University in 1984 and my medical degree from American University of the Caribbean in 1988. I completed my internal medicine residency at East Tennessee State University. I am currently licensed to practice medicine in Tennessee and I have maintained licensure continuously since 1989.

3.  I was Ms. Weaver's primary care physician from October 3, 1995 to July 26, 2007 and I saw, evaluated, and treated Ms. Weaver at my office during this time.

. . . .

10.  At all times I cared for and treated Ms. Weaver, my conduct was appropriate and relative to being her primary care physician. Although Ms. Weaver claims that I sexually

(continued...)

affidavit established that he did not sexually assault her.  Doctor concluded that Patient's claim could not survive summary judgment unless she produced effective proof refuting his affidavit and establishing a serious emotional injury.

Patient filed a response, which she similarly supported with an affidavit, a memorandum of law, and a response to Doctor's statement of undisputed facts, arguing that genuine issues of material fact precluded summary judgment on her cause of action for IIED. Patient's affidavit stated:

1.  Dr. Pardue was my primary care physician from 1995 until July 26, 2007.

2.  Prior to May 2, 2007, Dr. Pardue had never exhibited any unprofessional behavior.

3.  On May 3, 2007, Dr. Pardue and I were alone in the examining room. My appointment that day was for a prescription refill only.  Dr. Pardue inappropriately reached into my shirt and touched my breasts in a fondling manner and made sexually suggestive remarks.  I was frightened and shocked and in disbelief.  I convinced myself that I must have misread his behavior because he had never done anything like that in the past.

4.  On June 4, 2007[,] I had another appointment with Dr. Pardue, also for my monthly prescription refills.  During this visit Dr. Pardue rubbed himself against me and touched my breasts again.  I was frightened and confused and I asked him to please write out my prescriptions and he smiled and said, "What do I get for it?" in a very suggestive manner. Once again, I tried to convince myself that I had misrepresented his

---

[2](...continued)
assaulted her during office visits on May 3, 2007, June 4, 2007, and July 26, 2007, I did not sexually assault Ms. Weaver during these visits or during any office visit.

. . . .

13.  To a reasonable degree of medical probability, I complied with the applicable standard of care at all times I provided care and treatment to Ms. Weaver.

14.  To a reasonable degree of medical probability, nothing I did or allegedly failed to do caused an injury to Ms. Weaver, or an outcome which would not otherwise have occurred.

words and actions.

5.     My final visit with Dr. Pardue occurred on July 25, 2007. Dr. Pardue put his hand in my shirt and ran his finger up and down my cleavage and rubbed his penis on my leg. While he was doing this he said, "When are you going to work out with me?" I reminded him that I owned a ladies only gym, to which he relied, "No, I mean after hours." After this incident I could no longer convince myself that his words and actions were professional and free of innuendo. I knew and believed that Dr. Pardue had sexually assaulted me.

6.     At no time did I invite, nor consent to, any conduct beyond that of physician and patient.

Patient's "SUPPLEMENTED ANSWERS TO FIRST SET OF INTERROGATORIES PROPOUNDED TO PLAINTIFF TERESA L. WEAVER" included a nearly identical description of the events and further stated that Patient reported the alleged instances of sexual assault to the Metropolitan Nashville Police Department's Sexual Assault Division several weeks after the July 2007 incident.[3] Patient's motion and memorandum maintained that summary judgment was inappropriate if the court properly construed these and other evidentiary materials in a light most favorable to her.

On December 11, 2009, the trial court conducted a hearing on Doctor's motion. Patient opposed only the grant of summary judgment on her cause of action for IIED arising out of the July 26, 2007 visit. The trial court granted summary judgment to Doctor on each cause of action alleged in the complaint. The court held in part:

> The Court considers Plaintiff's claim for intentional infliction of emotional distress as it relates to Plaintiff's office visit on July 26, 2007 only. All allegations associated with dates prior to June 30, 2007 are time barred by the one (1) year statute of limitations pursuant to T.C.A. § 28-3-104 and are dismissed for failure to state a claim upon which relief may be granted.

> A claim for intentional infliction of emotional distress requires a plaintiff to present material proof establishing that (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society, (3) the defendant's conduct resulted

_____

[3]Similar evidentiary materials or sworn statements demonstrating that Doctor's alleged actions caused Patient serious mental injury remain notably absent from the record.

-4-

in serious mental injury to the plaintiff. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). The courts have explained the standard for determining whether conduct amounts to being so outrageous that it cannot be tolerated by civilized society.

> [I]t is not sufficient that a defendant "has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Id.* (citations omitted). A plaintiff must in addition show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Id.* at 51.

The Court finds the conduct of Defendant, if true, despicable. However, the Court questions the credibility of Plaintiff's emotional distress considering that Plaintiff admittedly presented to Defendant's office on two other separate visits (June 4, 2007 and July 26, 2007) following the first occasion (May 3, 2007) when she admitted she believed Defendant's conduct was inappropriate. It is troubling for the Court to find the conduct so outrageous in character so as to go beyond all possible bounds of decency when the Plaintiff herself returned to the office knowing that she would be in a close proximity with Defendant. If Plaintiff did not find Defendant's conduct so atrocious so as to return to Defendant's office knowing she would be under his care, then this Court cannot find the conduct so atrocious so as to rise to the standard established by the Courts for a finding of intentional infliction of emotional distress.

Patient timely appealed.[4]

## II. Issues Presented

The issues before this Court, as we perceive them, are as follows:

(1)     Whether the trial court improperly relied upon a credibility determination as the basis of its decision;

---

[4]Patient's husband did not appeal the grant of summary judgment on his claim for loss of consortium.

(2)     Whether Patient's allegations of sexual assault, if true, satisfy the outrageousness element of IIED;

(3)     Whether Doctor's conclusory affidavit stating that he did not cause an injury to Patient that otherwise would not have occurred negated the serious mental injury element of IIED, thereby shifting the burden of production to Patient to create a genuine issue of material fact.

### III.  Standard of Review

This Court reviews a trial court's decision on a motion for summary judgment *de novo* with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004)).  We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.* (citing *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000)).  "Summary judgment is inappropriate unless the facts and the conclusions to be drawn from them permit a reasonable person to reach only a single conclusion." *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 41 (Tenn. 2005) (citing *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002)).

### IV.  Analysis

Rule 56 of the Tennessee Rules of Civil Procedure provides that a party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  The moving party has the ultimate burden of demonstrating that summary judgment is appropriate, *Martin*, 271 S.W.3d at 83 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)), and consequently bears the initial burden of providing a properly supported motion showing there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, *id.* (citing *Staples*, 15 S.W.3d at 88; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).  "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5).

A party will not succeed on a motion for summary judgment merely by asserting that

the nonmoving party is without evidence to support its claim. *Id.* at 83-84 (citing *Byrd*, 847 S.W.2d at 215). "The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 84 (citing *Hannan*, 270 S.W.3d at 5). Production of evidence raising doubts about the merits of the nonmoving party's claim will not suffice. *Id.* (citing *McCarley*, 960 S.W.2d at 588). "[T]he moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* (citing *Blair*, 130 S.W.3d at 768). If the moving party does not carry its initial burden, the nonmoving party has no obligation to produce evidentiary materials in support of its position. *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Staples*, 15 S.W.3d at 88).

Once a moving party carries its initial burden, the focus of the inquiry shifts to the nonmoving party who must "affirmatively show facts either (a) supporting the elements of its claim or defense if it has the burden of persuasion, or (b) negating the movant's claim or defense if the movant has the burden of persuasion." Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 27:5, at 382-83 & n.48 (2010) (collecting cases). The Tennessee Supreme Court has articulated four methods by which the nonmoving party can satisfy its burden of production and defeat a motion for summary judgment:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 n.6 (Tenn. 1993)). Courts must accept the evidence proffered by the nonmoving party as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citation omitted). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215).

### A. Credibility Determination

Patient's principal position on appeal is that the trial court incorrectly applied the

summary judgment standard. Patient argues that the trial court improperly made a credibility determination, weighed the evidence, and disregarded her version of events when it granted summary judgment in favor of Doctor. We agree. "[T]he purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed, material facts, or the determination of conflicting inferences reasonably to be drawn from those facts." *Byrd*, 847 S.W.2d at 216; *see also In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (quoting *Martin*, 271 S.W.3d at 87) ("At the summary judgment phase, 'it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact.'"). "'The purpose is to resolve controlling issues of law, and that alone.'" *Byrd*, 847 S.W.2d at 216 (quoting *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988)) (citing *Rollins v. Winn Dixie*, 780 S.W.2d 765, 767 (Tenn. Ct. App. 1989)). Thus, a trial court should not grant summary judgment "[w]hen a material fact is in dispute creating a genuine issue, *when the credibility of witnesses is an integral part of the factual proof*, or when evidence must be weighed." *Id.*; *see also Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 320 (Tenn. 2007) (citing *Byrd*, 847 S.W.2d at 210) ("Issues of witness credibility present issues of fact and must be construed in favor of a nonmoving party when considering a motion for summary judgment."). Here, the trial court concluded that Doctor's alleged conduct could not satisfy the outrageousness element of IIED because Patient did not find the conduct "so atrocious" as to prevent her return to his office. In addition to misapplying the law, the court erred when it (1) made a factual determination regarding Patient's state of mind that discredited Patient's explanation for her return to Doctor's office following the first two alleged instances of sexual assault and (2) ignored the reasonable inference that Doctor's conduct prevented her from returning to his office following the third alleged sexual assault. The court further erred when it questioned the credibility of Patient's allegation of emotional distress. At summary judgment, a trial court must accept the evidence offered by the nonmoving party as true, review the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party. Because the trial court violated these principles, we cannot sustain its decision.

Doctor argues that this Court should nevertheless affirm the trial court's grant of summary judgment for additional reasons set forth in his appellate brief.[5] Doctor first contends that his alleged conduct, even if true, was not the type of outrageous, extreme, atrocious, and utterly intolerable conduct that would support a finding of IIED. He further contends that his affidavit affirmatively negated the existence of a serious mental injury caused by his alleged conduct, thereby shifting the burden to Patient to establish a genuine issue of material fact. Because Patient indisputably did not provide any evidence showing

_____

[5]Doctor presented similar arguments to the trial court and Patient has not objected to their consideration on appeal.

-8-

that the alleged conduct caused her a serious mental injury, Doctor submits there is no genuine issue of material fact precluding the grant of summary judgment in his favor. We will address these arguments in turn.

### B. Outrageous Conduct

Doctor submits that his alleged conduct, even if true, is not as a matter of law "so outrageous that it is not tolerated by civilized society." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1998) (citing *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966), *overruled on other grounds by Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996); *Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 144 (Tenn. Ct. App. 1975)). A plaintiff's burden to demonstrate outrageous conduct "is not an easy burden to meet." *Oates v. Chattanooga Pub. Co.*, 205 S.W.3d 418, 428 (Tenn. Ct. App. 2006). Liability for IIED "'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" *Bain*, 936 S.W.2d at 622 (quoting *Medlin*, 398 S.W.2d at 274). The Tennessee Supreme Court, while recognizing that "no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious," has endorsed the "high threshold" of the Restatement (Second) of Torts:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"

*Bain*, 936 S.W.2d at 622-23 (quoting *Medlin*, 398 S.W.2d at 274 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (citing *Goldfarb v. Baker*, 547 S.W.2d 567, 568-69 (Tenn. 1977); *Blair v. Allied Maint. Corp.*, 756 S.W.2d 267, 273 (Tenn. Ct. App. 1988); *Holt v. Am. Progressive Life Ins. Co.*, 731 S.W.2d 923, 926-27 (Tenn. Ct. App. 1987); *Bryan v. Campbell*, 720 S.W.2d 62, 64-65 (Tenn. Ct. App. 1986)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." Restatement (Second) of Torts § 46 cmt. h (1965); *accord Alexander v. Inman*, 825 S.W.2d 102, 105

(Tenn. Ct. App. 1991) (citing *Medlin*, 398 S.W.2d at 275). "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts § 46 cmt. h (1965); *accord Medley v. A.W. Chesterton Co.*, 912 S.W.2d 748, 754-55 (Tenn. Ct. App. 1995)).

Doctor does not submit, and rightfully so, that sexual assault arising out of the doctor-patient relationship is acceptable conduct that members of the community readily tolerate. Nor does Doctor argue that recitation of Patient's allegations to an average member of the community would not arouse resentment against him. Doctor's sole argument is that the undisputed facts show that Patient did not deem the alleged conduct outrageous and, therefore, this Court should follow suit. This argument is without merit for several reasons: it ignores Patient's sworn statements that she convinced herself she misinterpreted Doctor's conduct during the first two visits; it ignores the reasonable inference that Patient found Doctor's alleged conduct in the third visit so intolerable and outrageous that she terminated their longtime doctor-patient relationship, initiated an investigation of Doctor's prior practices, and reported Doctor's alleged conduct to the police; and it ignores the controlling question of whether an average member of the community would deem Doctor's alleged conduct extreme, atrocious, and outrageous, focusing instead on Patient's perceived subjective state of mind. We reject Doctor's position and hold that reasonable minds, at the very least, may differ on whether Doctor's alleged conduct is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Doctor is not entitled to summary judgment on this issue.

### C. Serious Mental Injury

The closer question in this case is whether Doctor presented undisputed facts negating Patient's allegation of serious mental injury. In order to recover for IIED, a plaintiff must establish that the defendant's alleged conduct caused a serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1998) (citations omitted). Doctor's affidavit stated to a reasonable degree of medical probability that nothing he did or failed to do caused an injury to Patient or an outcome that otherwise would not have occurred. Doctor argues that this broad statement sufficiently negated Patient's allegation of serious mental injury, thereby shifting the burden of production to Patient to establish a genuine issue of material fact. Doctor argues that Patient clearly did not present any evidence to show that he caused or that she suffered a serious mental injury, entitling him to summary judgment. Because Doctor correctly asserts that nothing in the record supports Patient's allegation of serious mental injury, the resolution of this question hinges solely on whether Doctor's affidavit shifted the burden of production to Patient in the first instance.

In medical malpractice cases, the filing of a defendant doctor's self-serving expert affidavit is generally a valid way in which to shift the burden of production to a plaintiff patient on essential elements of the doctor's alleged negligence. *Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003) (footnote omitted) (recognizing that it is now common for a medical practitioner to file a self-serving affidavit stating that his or her conduct neither violated the applicable standard of care nor caused injury to the plaintiff patient that would not otherwise have occurred in order to place the patient's medical malpractice claim to the test and force the patient to reveal the identity of testifying experts); *see also Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977) (holding that "in those malpractice actions wherein expert testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise"). "An affidavit of this sort effectively negates the negligence allegations in the patient's complaint and effectively forces the patient to demonstrate the existence of a genuine, material factual dispute warranting a jury trial." *Kenyon*, 547 S.W.2d at 758 (citing *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 438 (Tenn. 1998); *Dunham v. Stones River Hosp., Inc.*, 40 S.W.3d 47, 51 (Tenn. Ct. App. 2000)); *accord Fitts v. Arms*, 133 S.W.3d 187, 190-91 (Tenn. Ct. App. 2003). When determining whether Doctor's self-serving affidavit is sufficient to negate Patient's allegation of serious mental injury in this case, however, we must also consider the competing rule of *Blanchard v. Kellum*, 975 S.W.2d 522 (Tenn. 1998), pertaining to conclusory affidavits.

The Tennessee Supreme Court in *Blanchard* established that a defendant's conclusory assertions in a self-serving affidavit are insufficient to shift the burden of production to the plaintiff if they are unsupported by identified facts and do not respond to the specific allegations of the complaint. The plaintiff in *Blanchard* filed suit for medical battery and/or lack of informed consent against a dentist following an alleged attempt to extract all thirty-two of the plaintiff's teeth in a single visit without her consent. *Blanchard*, 975 S.W.2d at 523. In determining whether to analyze the claim at issue as a claim for medical battery, the supreme court applied a two-part inquiry:

> (1) was the patient aware that the doctor was going to perform the procedure (i.e., did the patient know that the dentist was going to perform a root canal on a specified tooth or that the doctor was going to perform surgery on the specified knee?); and, if so (2) did the patient authorize performance of the procedure?

*Id.* at 524. The supreme court stated that a claim is classified as a claim for medical battery if the answer to either of the above questions is no. *Id.* Because the plaintiff in *Blanchard*

argued that she was unaware of the dentist's intention to perform a full extraction and she did not authorize the full extraction, the supreme court treated her claim as one for medical battery which did not require expert testimony. *Id*. at 524-25.

The supreme court then turned to the question of whether the dentist had affirmatively negated an essential element of the plaintiff's claim, thereby shifting the burden of production to the plaintiff. *Id.* at 525. The court noted that "[t]he primary consideration in a medical battery case is simply whether the patient knew of and authorized a procedure." *Id.* at 524. The dentist submitted that her affidavit stating that "she acted 'in a recognized and approved form . . . and that such treatment would not and did not fail to meet the standard of care. . . .'" effectively negated the patient's allegation that the procedure was unauthorized. *Id.* at 525. The supreme court disagreed and considered such conclusory assertions insufficient to negate an essential element of the patient's cause of action for medical battery, noting that the dentist's conclusory assertions were "non-responsive" to the plaintiff's allegation that the dentist failed to inform her of the dentist's intent to perform a full extraction. *Id.* If the dentist intended to show that she performed the procedure with consent, she needed to "proffer admissible evidence establishing that the plaintiff authorized a full extraction to trigger the plaintiff's burden, such as a signed consent form authorizing a full extraction." *Id.* The dentist, however, had supplied no such evidence. *Id.* After rejecting the dentist's theory of implied consent as a basis for the grant of summary judgment, the supreme court held that summary judgment was inappropriate. *Id.*

Tennessee courts have since recognized and applied the rule of *Blanchard* in subsequent cases. *See Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363 (Tenn. 2009) (citing *Byrd*, 847 S.W.2d at 215; *Blanchard*, 975 S.W.2d at 525) (stating that conclusory assertions "are not sufficient to shift the burden to the non-moving party" in a summary judgment case); *Chapman v. Bearfield*, 207 S.W.3d 736, 741 n.3 (Tenn. 2006) (noting that an attorney's self-serving and conclusory affidavit filed at summary judgment in a legal malpractice action stating that he and the attorneys under his direction at all times complied with the applicable standard of care did not alone remove from controversy the specific factual disputes apparent in the parties' pleadings); *Barna v. Preston Law Group, P.C.*, No. M2008-02560-COA-R3-CV, 2009 WL 2616038, at *6 (Tenn. Ct. App. Aug. 25, 2009) (*no perm. app. filed*) (citing *Hannan*, 270 S.W.3d at 8; *Blanchard*, 975 S.W.2d at 525) (recognizing that "[i]n the context of summary judgment, our Supreme Court has stated that conclusory opinions that are not supported by or based upon identified facts are not sufficient to shift the burden of production to the nonmoving party"); *see also Hannan*, 270 S.W.3d at 8 (recognizing *Blanchard* as a case properly applying Tennessee's burden-shifting principles); Judy M. Cornett, *Trick or Treat? Summary Judgment in Tennessee After Hannan v. Alltel Publishing Co.*, 77 Tenn. L. Rev. 305, 341 (2010) (quoting *Hannan*, 270 S.W.3d at 8) (recognizing the continuing applicability of the principle first articulated in *Blanchard* that

a "movant cannot shift the burden by 'submitting an affidavit that is merely conclusory'").

The question here is whether the rule of *Blanchard* applies to the conclusory assertions of Doctor that purportedly negated the existence of a serious mental injury at summary judgment. The trial court deemed Doctor's affidavit sufficient to warrant summary judgment on Patient's medical malpractice claims, which Patient has not disputed in this appeal. The controlling distinction, however, is that Doctor's self-serving affidavit was not conclusory with respect to the allegations of medical negligence; it detailed his alleged treatment of Patient, the facts serving as the basis of his conclusion, and his qualifications as a medical doctor. *See* Cornett, *supra*, at 341 (citation omitted) (recognizing that the simple fact that an expert's affidavit is self-serving does not make it conclusory). This is often true in medical malpractice claims where the expert offering an opinion on the existence or non-existence of an essential element of the plaintiff's claim is the same person alleged to have committed negligence in the complaint. *E.g., Miller v. Birdwell*, No. M2009-01730-COA-R9-CV, 2010 WL 2516877, at *6-8 (Tenn. Ct. App. June 23, 2010), *perm. app. denied* (Tenn. Oct. 12, 2010).

This case presents an altogether different situation with respect to Doctor's assertion that his actions did not cause Patient a serious mental injury. Doctor has not alleged undisputed facts to show that he examined the patient with respect to the alleged mental injury, treated the patient for the alleged mental injury, maintained contact with the patient following the conduct allegedly causing the injury, or possessed the requisite knowledge and expertise to offer an opinion on whether his alleged conduct caused the alleged injury. Doctor's affidavit does not establish a factual basis upon which to establish the non-existence of Patient's serious mental injury or to determine its cause; his assertions are wholly conclusory. At best, Doctor's conclusory assertions cast doubt on the existence of Patient's serious mental injury; they do not tend to disprove the allegation of serious mental injury contained in her complaint nor do they tend to disprove the allegation that Doctor's conduct caused Patient to suffer serious mental injury. Doctor's conclusory assertions are therefore insufficient to shift the burden of production to Patient. Because Doctor's affidavit did not trigger Patient's burden, she was under no obligation to point to evidence establishing material factual disputes that were over-looked or ignored by Doctor, to rehabilitate the evidence attacked by Doctor, or to produce additional evidence establishing the existence of a genuine issue for trial. Her failure to do so was immaterial.

We reject the notion that this Court's decision in *Oates v. Chattanooga Pub. Co.*, 205 S.W.3d 418 (Tenn. Ct. App. 2006), requires a contrary conclusion. The plaintiff in *Oates* filed suit against her employer of twenty-three years, the Chattanooga Publishing Company, alleging that fellow employees had continually harassed and mocked her because of her physical and mental disabilities, which the plaintiff asserted amounted to intentional and/or

negligent infliction of emotional distress. *Oates*, 205 S.W.3d at 420. The trial court granted the employer summary judgment on the claim for IIED because, in the words of this Court, "[p]laintiff failed to create a genuine issue of material fact as to whether she suffered any severe or serious emotional injury." *Id.* at 429. As the trial court had explained in its order:

> The Plaintiff never sought or received any counseling or treatment for her alleged emotional distress and did not allege any way in which her emotional distress manifests itself. As such the record is completely devoid of evidence of a serious mental injury and summary judgment is appropriate.

*Id.* (quoting the trial court). On appeal, we recognized that the plaintiff offered nothing to dispute the trial court's ruling and was unable to direct us to any evidence in the record to support a different result. *Id.* We accordingly affirmed the trial court's decision. *Id.*

Our decision in *Oates* is susceptible to two interpretations regarding the plaintiff's "failure to create a genuine issue of material fact." The first interpretation would infer that the employer carried its initial burden to allege undisputed facts negating the element of serious mental injury and that the plaintiff thereafter failed "to create a genuine issue of material fact," i.e., plaintiff failed to point to evidence establishing material factual disputes that were over-looked or ignored by the employer, to rehabilitate the evidence attacked by the employer, or to produce additional evidence establishing the existence of a genuine issue for trial. The second interpretation would place the initial burden on the plaintiff to create a genuine issue of material fact on the question of serious mental injury irrespective of the employer's burden. Only the former interpretation is consistent with the burden-shifting analysis applicable in Tennessee as clarified in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008), and *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76 (Tenn. 2008). We accordingly read *Oates* as holding that the employer carried its initial burden to negate the existence of serious mental injury and that the plaintiff failed to carry her burden in response, thus entitling the employer to summary judgment. To the extent *Oates* can be read to the contrary, it is now inconsistent with supreme court precedent and does not control our decision.[6] Because Doctor did not carry his initial burden to negate the existence of a serious mental injury, the reasoning of *Oates* does not apply to the case at bar. Doctor is not entitled to summary judgment on this issue.

In conclusion, the purpose of summary judgment is not to resolve genuine issues of material fact going to the heart of the controversy; rather, the summary judgment procedure is intended to resolve disputes for which the application of controlling legal principles to the

---

[6]We conclude that Doctor's interpretation of the case is inconsistent with more recent summary judgment jurisprudence.

undisputed facts is dispositive. In this case, Doctor did not carry his initial burden as the party moving for summary judgment to show that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law on Patient's cause of action for IIED. We therefore reverse the decision of the trial court and remand this case for further proceedings.

## V. Conclusion

For the foregoing reasons, we reverse the grant of summary judgment in favor of Doctor and remand this case for further proceedings. Costs of this appeal are taxed to the appellee, Travis K. Pardue, for which execution may issue if necessary.


_____
DAVID R. FARMER, JUDGE