IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 2, 2022

## IN RE RHYDER C.[1]

**Appeal from the Circuit Court for Knox County
No. 2-32-20   William T. Ailor, Judge**

————————————————————

## No. E2021-01051-COA-R3-PT

————————————————————

This appeal arises from an unorthodox procedural history, wherein the trial court made its findings of facts and conclusions of law in an order granting summary judgment, the result of which terminated the mother/appellant's parental rights. The court determined that the undisputed material facts clearly and convincingly established five grounds on which to terminate the mother's parental rights. The court also found the undisputed material facts established that termination of her parental rights was in the child's best interest. The mother appeals, asserting that the trial court violated her due process rights by terminating her parental rights without affording her an effective opportunity to cross-examine adverse witnesses. She contends the trial court erred by denying her motion to continue the hearing on the petitioners' motion for summary judgment. She also contends the trial court erred by granting summary judgment on each of the alleged statutory grounds for termination as well as the issue of the child's best interests. Following a careful review of the record, we have determined that the mother's due process rights were not violated, and the trial court did not err in denying her motion for a continuance. We reverse the trial court's ruling that Petitioners proved the ground of failure to manifest an ability and willingness to assume custody or financial responsibility; however, we affirm the trial court in all other respects. Accordingly, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed in Part, Affirmed in Part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

Mary Livingston Ward, Knoxville, Tennessee, for the appellant, Tesla F.

N. David Roberts, Jr., Knoxville, Tennessee, for the appellees, Edward C. and Vickie C.

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the parents and child.

Christine L. Dummer, guardian ad litem, Knoxville, Tennessee, for the appellee, Rhyder C.

# OPINION

## FACTS AND PROCEDURAL HISTORY

Rhyder C. ("the Child") was born in March 2018, to Tesla F. ("Mother") and Bradley C. ("Father").[2] The day after the Child was born, the Department of Children's Services ("DCS") received a child safety referral from UT Medical Center because Mother tested positive for subutex/suboxone upon her admission to the hospital. That same day, March 26, 2018, William Malone, a DCS Case Manager, interviewed Mother. During the interview, Mother reported that she used illegal substances during her pregnancy. Specifically, she reported using Neurontin at the beginning of March 2018, opiates on November 25, 2017, and methamphetamine on November 21, 2017. Accordingly, DCS initiated an expedited home study on the Child's paternal grandparents, Edward C. and Vickie C. ("Petitioners") and found them fit and suitable to have custody of the Child.

On April 3, 2018, DCS filed a Petition for Adjudication of Dependency and Neglect, alleging severe child abuse by Mother pursuant to Tennessee Code Annotated § 37-1-102(b)(27)(A). The next day, the Knox County Juvenile Court entered an *ex parte* order removing the Child from the parents' custody after it found probable cause to believe that the Child was dependent and neglected pursuant to Tenn. Code Ann. §37-1-102(b) and placed the Child in the legal custody of DCS and in the physical custody of Petitioners. The court also awarded Petitioners temporary legal custody and set a hearing for April 6, 2018.

Petitioners and Mr. Malone appeared and testified at the April 6 hearing; however, neither Mother nor Father attended. Based upon the testimony of Petitioners and Mr. Malone, the juvenile court found it was in the Child's best interest to remain in Petitioners' custody. The court also ordered both parents to complete a mental health assessment as well as alcohol and drug assessments and to follow all recommendations made by such assessments. Mother and Father were further ordered to obtain adequate housing, provide proof of a legal source of income, complete appropriate supervised visits with the Child, sign a HIPPA release for DCS and the Child's Guardian Ad Litem, and pass random drug screens. The final adjudicative hearing was set to be heard on June 7, 2019.

The DCS petition was adjudicated at the final hearing on June 7, 2019; however, neither parent attended. DCS, which had subpoenaed Mother's prenatal records, presented

---

[2] Father's parental rights were also terminated. He has not appealed that decision and is not a party to this appeal.

substantial evidence for the court's consideration. Following the hearing, the juvenile court found the Child was a victim of severe abuse as defined by Tennessee Code Annotated § 37-1-102(b)(27)(A) based on its conclusion that Mother exposed the Child to illicit drugs during her pregnancy; the court also found that the Child was dependent and neglected due to the parents' unresolved substance abuse issues. These conclusions were set forth in the Final Order dated August 7, 2019, and based, in part, on Mother's medical records showing substance abuse throughout her pregnancy.

As set forth in the juvenile court's findings, Mother's pregnancy was confirmed on August 30, 2017. Mother began treatment at High Risk Obstetrical Consultants on November 27, 2017, wherein she discussed her substance abuse history. Mother acknowledged that she used opiates on November 21 and November 25. Mother took multiple drug screens during her pregnancy and tested positive for gabapentin on February 2, 2018, and February 23, 2018, and was positive for methamphetamine on March 14, 2018. Upon her admission to the hospital, Mother tested positive for subutex/suboxone and admitted that she had relapsed. Neither Father nor Mother appealed these findings.

Thereafter, and upon the application of DCS and Petitioners, the Juvenile Court awarded legal and physical custody of the Child to Petitioners, who have retained sole custody ever since.

*Termination Proceedings*

On January 31, 2020, Petitioners filed a petition in the Knox County Circuit Court to terminate both parents' parental rights. In support of their petition, the Petitioners alleged as grounds for termination of Mother's parental rights: (1) abandonment by failing to provide support during the four consecutive months immediately preceding the filing of their petition; (2) abandonment by failing to visit during the four consecutive months immediately preceding the filing of their petition; (3) that the conditions which led to the Child's removal from Mother's custody still persisted; (4) that Mother committed severe child abuse against the Child, as found in the juvenile court's final order; (5) that Mother failed to manifest an ability and willingness to personally assume legal and physical custody of the Child or financial responsibility for the Child. Petitioners also asserted that termination of Mother's parental rights was in the Child's best interest.

Both parents were served with a summons and the petition by personal service. Thereafter, the court appointed legal counsel for Mother and Father as well as a guardian ad litem for the Child. Father was served with process while detained in the Knox County Detention facility and the order appointing his attorney was mailed to Father at the Knox County Detention Center. Father was released from detention before counsel could meet with him and Father has failed to communicate with his appointed counsel. As a consequence, Father's parental rights were terminated in these proceedings, and he did not

- 3 -

appeal that decision. Meanwhile, Mother filed an answer, through her attorney, on March 20, 2020, which did not raise any affirmative defenses.

Mother was served with requests for admissions and interrogatories. With the assistance of her counsel, Mother provided signed admission responses dated June 4, 2020 and signed interrogatory responses dated June 9, 2020. In her response to Petitioners' Request for Admissions, Mother admitted to each of the fifty-five requested admissions.

Petitioners then filed a motion for summary judgment on the petition to terminate Mother's parental rights. The motion was supported with a statement of material facts, Petitioner Vicki C.'s sworn affidavit, Mother's sworn Answer, and Mother's responses to the requests for admissions and interrogatories.

Mother responded to the motion for summary judgment, wherein she did not dispute any of the first 85 facts set forth in the Petitioners' Statement of Material Facts. In total, the Petitioners set forth 94 facts, but Mother's response to the motion for summary judgment did not acknowledge the remaining nine facts. Nevertheless, Mother's response contended that "consideration of the statutory factors are questions of fact which are in dispute and require testimony to be presented by both parents and the custodian."

Although she admitted 85 of the 94 facts, in her response to the motion, Mother asked the court not to grant the Petitioners' motion for summary judgment and to instead permit the case to proceed so that either depositions or trial testimony could be evaluated by the court. Moreover, Mother claimed that the affidavit submitted by Petitioner, Vickie C., should be subjected to cross-examination because it was self-serving.

An agreed order was entered on March 23, 2021, and with the consent of all counsel, the hearing on Petitioners' Motion for Summary Judgment was set for April 22, 2021. Yet, on April 1, 2021, counsel for Mother filed a motion requesting a continuance on the motion for summary judgment, seeking additional time for depositions.

In response, Petitioners argued that Mother did not request discovery prior to the motion for summary judgment being filed or prior to agreeing to a hearing date. Petitioners also asserted that they were entitled to summary judgment as a matter of law, arguing that Mother's admissions proved that no material facts were in dispute.

At the beginning of the summary judgment hearing, the court asked for arguments regarding Mother's request for a continuance to take additional depositions. Mother's counsel explained that she began attempting to coordinate depositions with Petitioners' counsel to no avail in November of 2020. Petitioners' counsel contended that Mother's counsel could have provided written notice and served it upon all of the parties pursuant to Tennessee Rule of Civil Procedure 30.2. Additionally, the Child's guardian ad litem,

Christine Dummer,[3] supported Petitioners' position that the continuance requested should be denied. After considering the arguments of counsel, the trial court denied the request for a continuance and proceeded to conduct a hearing on the motion for summary judgment.

Following the hearing, the court granted the motion for summary judgment, finding there were no disputed issues of material fact. The court held that because Mother did not provide any responses to demonstrate that the facts set forth in Petitioners' Motion for Summary Judgment were disputed, summary judgment was appropriate. The court further noted that Mother had not filed any opposing affidavits in response to the motion for summary judgment.

This appeal followed.

## ISSUES

Mother raises several issues on appeal, which we have restated and consolidated:

I. Whether the trial court abused its discretion by denying Mother's motion to continue the hearing on the motion for summary judgment?

II. Whether the trial court violated Mother's due process rights by terminating her parental rights without affording her an effective opportunity to cross-examine adverse witnesses on the issue of the child's best interest?

III. Whether the trial court erred by granting summary judgment on a) the ground of abandonment for failure to pay child support; b) the ground of abandonment for failure to visit; c) the ground of persistence of conditions; and d) the ground of ability and willingness to assume legal and physical custody or financial responsibility of the Child?

IV. Whether the trial court erred by granting summary judgment on the issue of whether it was in the Child's best interest to terminate Mother's parental rights?

## STANDARD OF REVIEW

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). "[T]his right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

---

[3] The court appointed Christine Dummer as the Child's guardian ad litem on February 28, 2020.

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *In re Carrington H.*, 483 S.W.3d at 522.

In an appeal, "this court is required 'to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.'" *In re Connor B.*, 603 S.W.3d 773, 779 (Tenn. Ct. App. 2020) (quoting *In re Carrington H.*, 483 S.W.3d at 525). In doing so, we must determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). Stated another way, we must make our own "determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

The trial court's findings of fact are reviewed de novo upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d at 523–24; *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed de novo with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). A trial court's determinations regarding witness credibility are entitled to great weight on appeal and will not be disturbed absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007).

## ANALYSIS

### I. REQUEST TO CONTINUE SUMMARY JUDGMENT HEARING

Mother contends the trial court erred by denying the motion for a continuance of the hearing on Petitioners' Motion for Summary Judgment. Petitioners contend the trial court acted appropriately by denying the motion for several reasons including the fact that Mother's motion does not comply with Rule 56.07 and does not state that she cannot present by affidavit facts essential to justify the opposition.

The decision to grant or deny a motion to continue falls within the sound discretion of the trial court. *In re Trinity P.*, No. E2019-01251-COA-R3-PT, 2020 WL 995788, at *4

(Tenn. Ct. App. Mar. 2, 2020). Thus, appellate courts will decline to disturb a trial court's ruling on a motion to continue absent an abuse of discretion. *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011).

We begin our analysis by noting that Mother voluntarily entered into an agreed order to set Petitioners' Motion for Summary Judgment for hearing on April 22, 2021. Thus, by agreeing to set the motion for hearing, Mother represented to the court that she was prepared to defend the motion.

We also find it significant that when Mother filed a written response opposing Petitioners' Motion for Summary Judgment, she did not dispute any of the facts set forth in Petitioners' Statement of Undisputed Facts. Thus, those facts were deemed undisputed for purposes of the motion for summary judgment. Moreover, in her responses to the request for admissions, Mother admitted that each matter set forth by Petitioners was true. Thus, those facts were also undisputed.

It is also significant that at no time during the pendency of this action did Mother submit written discovery to Petitioners or file a notice to depose Petitioners or any other potential witnesses. Nevertheless, as the hearing date approached, Mother filed a motion seeking a continuance.

Importantly, as Petitioners note in their brief, Rule 56.07 provides that "should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Tenn. R. Civ. P. 56.07. However, Mother did not present any affidavits to support her contention that she could not present the facts necessary to justify opposing the motion. Further, her motion failed to explain why the affidavits she needed to oppose the motion could not be obtained. In sum, Mother's motion did not comply with Rule 56.07.

"The party seeking a continuance bears the burden of establishing the circumstances that justify the continuance." *Osagie v. Peakload Temp Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). Among the circumstances considered by courts are: "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003).

As is relevant to the first factor, Tennessee Code Annotated § 36-1-113(k) provides that the hearing on a petition for parental termination shall take place within six months from the date the petition was filed, unless granting an extension is in a child's best interests. When the motion for summary judgment was filed, the proceeding had been

pending for approximately seven months. By the time Mother's counsel filed a motion for continuance on April 1, 2021, the case had been pending for nearly fourteen months.

Second, the reason for the continuance was insufficient. Mother's Response to the Motion for Summary Judgment Hearing was filed on October 30, 2020 and explained "that whether the adoption of the child is in the best interest of the child and the consideration of the statutory factors are questions of fact which are in dispute and require testimony to be presented by both parents and the custodians. [Mother] is entitled to take the custodians' depositions to determine whether there are questions of fact." Yet, in responding to the Petitioners' Motion for Summary Judgment, Mother admitted that facts 1-85 of 94 in the Petitioners' Statement of Material Facts were undisputed. Mother did not acknowledge or dispute the other nine facts set forth by Petitioners. Despite the conclusory statement that the statutory factors are "questions of fact which are in dispute," Mother presented nothing to establish that there were disputed questions of fact which necessitated a continuance.

Third, this Court must consider the diligence of the party seeking the continuance. *Nagarajan*, 151 S.W.3d at 172. As explained above, in the seven months that followed the filing of the petition before the summary judgment motion was filed, Mother's counsel did not take advantage of the various pre-trial discovery tactics available.

Finally, this Court must consider the "prejudice to the requesting party if the continuance is not granted." *Id.* For reasons unexplained by the record, Mother failed to propound any discovery to Petitioners even though fourteen months had passed since the commencement of this action by the time the motion was to be heard. Mother failed to take any action to depose Petitioners or other potential witnesses. Further, in her motion for a continuance, Mother failed to establish why she was unable to obtain affidavits or evidence to oppose the motion. Accordingly, we are unable to conclude that she was prejudiced by the denial of her motion for a continuance.

For these reasons, we cannot conclude that the trial court abused its discretion in denying Mother's motion.

II.      RIGHT TO CONFRONT ADVERSE WITNESSES

Mother contends her due process rights were violated because she did not receive an effective opportunity to confront adverse witnesses, meaning to, *inter alia*, cross-examine the Petitioners. More specifically, Mother contends:

> In both the Mother's response in opposition to the motion for summary judgment as well as in her motion for a continuance, undersigned counsel cited both the need to take the petitioners' deposition and the need to subject the petitioners to vigorous cross-examination **as the issue of whether it is in**

**the minor child's best interests to have his Mother's parental rights terminated**[.]

(emphasis added).

Following a close review of the record and considering that Mother did not dispute any of the material facts upon which summary judgment was granted, we find these contentions to be without merit.

The Due Process Clause imposes constraints on governmental decisions that deprive individuals of life, liberty, or property. *Hawk v. Hawk*, 855 S.W.2d 573, 578 (Tenn. 1993). "Indeed, the right to rear one's children is so firmly rooted in our culture that the United States Supreme Court has held it to be a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution." *Id.*

A "fundamental requisite" of due process of law is the "opportunity to be heard," which includes "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *In re Connor B.*, 603 S.W.3d 773, 786 (Tenn. Ct. App. 2020). Yet, default judgments terminating parental rights have been affirmed when proof has been presented from which the court can determine whether grounds exist for termination and whether termination is in the child's best interest. *Id.* at 786; *see* Tenn. Code Ann. § 36-1-117(n).

We begin by noting that Petitioners submitted to Mother a Rule 36.01 request for the admission of 55 facts, which were separately set forth as the rule requires. With the assistance of counsel, Mother filed a written response in which she replied "admitted" to each and every fact set forth in the Rule 36 request. Thus, these facts were deemed admitted. Thereafter, Petitioners filed a motion for summary judgment contending they were entitled to judgment as a matter of law as to the asserted grounds for termination as well as the Child's best interest issue. The motion was also supported by a statement of undisputed facts as required by Rule 56.

In her written response, Mother admitted that each of the first 85 enumerated facts were undisputed. For reasons unexplained by the record, Mother did not admit or dispute the "undisputed facts" enumerated as 86 through 94. Nevertheless, because Mother did not properly challenge or otherwise "dispute" these additional facts, all 94 enumerated facts set forth by Petitioners were deemed undisputed for purposes of summary judgment. Moreover, and significantly, it was these undisputed facts upon which Petitioners relied to show that they were entitled to judgment as a matter of law on each alleged ground of termination as well as the issue of the Child's best interest.

The foregoing facts notwithstanding, Mother contends she was deprived of the right to confront Petitioners concerning the issue of the Child's best interest because she was not

able to cross-examine them.[4] We, however, find this argument to be without merit for several reasons.

To begin, Mother's admissions that material facts relevant to the best interest issue are undisputed undermine her argument. This is evident from the following review of the relevant admissions in the context of the statutory best interest factors.

The first factor to be considered in determining whether termination is in a child's best interest is "[w]hether the parent . . . has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian." Tenn. Code Ann. § 36-1-113(i)(1). In this regard Mother admitted that she did not complete a mental health or alcohol and drug assessment, she never furnished proof of adequate housing for the Child, and she never furnished proof of a legal source of income. She also admitted that Petitioners have a close and loving relationship with the Child, that the Child has bonded with Petitioners, and that adoption of the Child by Petitioners is in the Child's best interest.

The second factor to be considered is "[w]hether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible." Tenn. Code Ann. §36-1-113(i)(2). In this regard Mother admitted that she had not demonstrated an adjustment of her circumstances, conduct, or conditions as to make it safe and in the Child's best interest to be in the home of the Mother.

The third factor to be considered is "[w]hether the parent . . . has maintained regular visitation or other contact with the child." Tenn. Code Ann. § 36-1-113(i)(3). With reference to this factor, Mother admitted she did not visit from September 2019 through January 2020, although she was permitted supervised visitation with the Child. She also admitted she has not maintained regular visitation or other contact with the Child or with Petitioners.

The fourth factor to be considered is "[w]hether a meaningful relationship has otherwise been established between the parent . . . and the child." Tenn. Code Ann. § 36-1-113(i)(4). In this regard, Mother admitted the Child has never lived with her and that she has no meaningful relationship with the Child.

The fifth factor to be considered is "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition." Tenn. Code Ann. § 36-1-113(i)(5). As for this factor, Mother has admitted that Petitioners have had legal custody of the Child since June 7, 2019, during which time

---

[4] In her brief on appeal, Mother limits this argument to the context of the Child's best interest without referencing any of the grounds for termination.

Petitioners have provided the Child with a loving home. Mother also admitted that Petitioners have provided the Child with a safe, stable, and nurturing home since his removal from Mother's custody. She also admitted that Petitioners have provided for the Child's financial, medical, dental, and health needs since his removal from Mother's custody and that a change of caretakers and physical environment is likely to have a detrimental effect on the Child's emotional, psychological, and medical conditions.

The sixth factor to be considered is "[w]hether the parent . . . , has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." Tenn. Code Ann. § 36-1-113(i)(5). In this regard, Mother admitted that she has shown neglect toward the Child as well as her other children, who are no longer in her custody.

The seventh factor to be considered pertains to the physical environment of the parent's home and whether it is healthy and safe, whether there is criminal activity in the home, or whether there is use of alcohol, controlled substances, or controlled substance analogues as may render the parent unable to care for the child in a safe and stable manner. Tenn. Code Ann. § 36-1-113(i)(7). With regard to these factors, Mother admitted that she never furnished proof of adequate housing for the Child. She also admitted to having prior arrests for theft and to being on supervised probation. She also admitted to struggling with alcohol and/or substance abuse which rendered her unable to care for the Child in a safe and stable manner.

The eighth factor to be considered is "[w]hether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child." Tenn. Code Ann. § 36-1-113(i)(8). Mother admitted that she did not complete a mental health or alcohol and drug assessment. She also admitted to struggling with alcohol and/or substance abuse which rendered her unable to care for the Child in a safe and stable manner.

The ninth factor to be considered is "[w]hether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101." Tenn. Code Ann. § 36-1-113(i)(9). In this regard, Mother admitted that she did not provide any monetary support for the Child during the four months preceding the filing of the petition for termination.

Realizing that the breadth and materiality of the facts Mother has admitted go to the core of the issue of the Child's best interests, we find no merit to Mother's contention that she was deprived of the right to confront Petitioners. Accordingly, Mother's due process rights were not violated.

### III. SUMMARY JUDGMENT IN TERMINATION PROCEEDINGS

Before we analyze the grounds for termination or the Child's best interests, we find it advisable to discuss the use of the summary judgment process in a termination of parental rights proceeding.

We begin by noting that summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 863 (Tenn. Ct. App. 2001) (citing *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn.1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000)). Moreover, we are unaware of any authority that precludes the use of summary judgment in termination of parental rights proceedings. To the contrary, this court affirmed the use of the summary judgment process in a termination proceeding in *M.P.P. v. D.L.K.*, No. E2001-00706-COA-R3CV, 2002 WL 459010, at *7 (Tenn. Ct. App. Mar. 26, 2002). In that case, we held that "the trial court properly granted judgment as a matter of law to Mother and Stepfather on [one of the grounds for termination] because the undisputed material facts establish the ground for termination of Father's parental rights under Tenn. Code Ann. § 36-1-113(g)(6)." *M.P.P.*, 2002 WL 459010, at *5. However, we also held "[s]ince Mother's and Father's affidavits create a genuine issue of material fact regarding whether termination of Father's parental rights would be in the best interest of the Child, the Motion for Summary Judgment should have been denied." *Id.* at *7.

Moreover, the proper use of the summary judgment process in our state courts was discussed in depth in the matter of *Byrd*, 847 S.W.2d at 214–16. As the court explained:

Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial.

First, when the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury [or finder of fact] to resolve in favor of one party or the other. In other words, when there is no dispute over the evidence establishing the facts that control the application of a rule of law, summary judgment is an appropriate means of deciding that issue.

Second, to preclude summary judgment, a disputed fact must be "material". A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. Therefore, when confronted with a disputed fact, the court must examine the elements of the claim or defense at issue in the motion to determine whether the resolution

of that fact will effect the disposition of any of those claims or defenses. By this process, courts and litigants can ascertain which issues are dispositive of the case, thus rendering other disputed facts immaterial.

Third, when the evidence or proof in support of or in opposition to a summary judgment motion establishes a disputed fact, and the fact is material, as we have defined that term, the court must then determine whether the disputed material fact creates a genuine issue within the meaning of Rule 56.03. Proceeding from the premise that Rule 56 is intended to avoid unnecessary trials, the test for a "genuine issue" is whether a reasonable jury could legitimately resolve that fact in favor of one side or the other. If the answer is yes, summary judgment is inappropriate; if the answer is no, summary judgment is proper because a trial would be pointless as there would be nothing for the jury [finder of fact] to do and the judge need only apply the law to resolve the case. In making this determination, the court is to view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor. And, again, "genuine issue" as used in Rule 56.03 refers to disputed, material facts and does not include mere legal conclusions to be drawn from those facts.

Fourth, the party seeking summary judgment has the burden of demonstrating to the court that there are no disputed, material facts creating a genuine issue for trial, as we have defined those terms, and that he is entitled to judgment as a matter of law. A conclusory assertion that the nonmoving party has no evidence is clearly insufficient. When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. The nonmoving party may not rely upon the allegations or denials of his pleadings in carrying out this burden as mandated by Rule 56.05 The evidence offered by the nonmoving party must be taken as true. Moreover, the facts on which the nonmovant relies must be admissible at the trial but need not be in admissible form as presented in the motion (otherwise an affidavit, for example, would be excluded as hearsay). To permit an opposition to be based on evidence that would not be admissible at trial would undermine the goal of the summary judgment process to prevent unnecessary trials since inadmissible evidence could not be used to support a jury verdict.

In sum, there can be no doubt that summary judgment is a helpful device, in appropriate cases, for the just, speedy, and inexpensive resolution of

litigation. Preparing the moving and opposition documents will require the parties to analyze the case, define the legal and factual issues with a high degree of precision, and marshall the relevant evidence. However, in order to fulfill its intended utility, Rule 56 must be properly invoked by the parties and properly applied by the courts. Appropriate application of the Rule is more likely to be achieved if litigants and courts alike keep in mind that the purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed, material facts, or the determination of conflicting inferences reasonably to be drawn from those facts. "The purpose is to resolve controlling issues of law, and that alone." *Bellamy v. Federal Exp. Corp.,* 749 S.W.2d 31, 33 (Tenn. 1988) (citing *Hamrick v. Spring City Motor Co.,* 708 S.W.2d 383, 388 (Tenn. 1986) and *Evco Corp. v. Ross,* 528 S.W.2d 20, 25 (Tenn. 1975)); *see also Rollins v. Winn Dixie,* 780 S.W.2d 765, 767 (Tenn. App. 1989) (summary judgment "is an efficient means to dispose of cases whose outcome depends solely on the resolution of legal issues."). When a material fact is in dispute creating a genuine issue, when the credibility of witnesses is an integral part of the factual proof, or when evidence must be weighed, a trial is necessary because such issues are not appropriately resolved on the basis of affidavits.

*Id.* (holding modified by *Hannan v. Alltel Publ'g Co*., 270 S.W.3d 1 (Tenn. 2008) and *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015)).

Tennessee Rule of Civil Procedure 56.02 provides that "to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 . . . shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." "Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record." *Id.*

Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with

specific citations to the record supporting the contention that such fact is in dispute.

*Id.*

Rule 56.04 provides, in relevant part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling.

Having discussed the summary judgment process, we now focus on the standards governing a petitioner's burden of proof in a parental rights proceeding as set forth in Tennessee Code Annotated § 36-1-113. In pertinent part, termination of parental rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c). The statutory scheme requires that the petitioner prove by clear and convincing evidence that at least one statutory ground for termination exists and that termination is in the child's best interest. *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Furthermore, § 36-1-113(k) requires a trial court to make "findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255.

"Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *In re Carrington H.*, 483 S.W.3d at 523. If the trial court's best interest analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id.* Conversely, appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id.* (citation omitted).

- 15 -

It is with these principles in mind that we review the trial court's grant of summary judgment as to each ground and as to the Child's best interests.

## IV. GROUNDS FOR TERMINATION

The trial court found that Petitioners established five grounds for terminating Mother's parental rights by clear and convincing evidence: (1) abandonment by failing to provide support during the four consecutive months immediately preceding the filing of the petition; (2) abandonment by failing to visit during the four consecutive months immediately preceding the filing of the petition; (3) the conditions which led to the Child's removal from Mother's custody still persisted; (4) Mother had committed severe child abuse against the Child, as found in the juvenile court's final order; (5) Mother had failed to manifest an ability and willingness to personally assume legal and physical custody of the Child or financial responsibility for the Child. We will address each ground in turn.

### A. Abandonment

The trial court found that Mother abandoned the Child by failure to visit and by failure to support as defined in Tennessee Code Annotated § 36-1-102(1)(A)(i), which states:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

The petition to terminate parental rights was filed on January 31, 2020; therefore, the four-month period immediately preceding the filing was September 30, 2019 to January 30, 2020. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at \*6 (Tenn. Ct. App. Feb. 20, 2014) ("[T]he applicable four-month window for determining whether child support has been paid in the context of . . . failure to support includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed."). We will analyze the grounds with this relevant period in mind.

### 1. Abandonment by Failure to Support

The trial court found clear and convincing evidence that Mother abandoned the Child by failing to support him pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(i). Mother contends the evidence did not clearly and convincingly establish this ground.

Parental rights can be terminated for abandonment, as that term is defined in Tennessee Code Annotated § 36-1-102. *See* Tenn. Code Ann. § 36-1-113(g)(1). One form of abandonment is failure to support, which occurs when a parent, "for a period of four (4) consecutive months, [fails] to provide monetary support or . . . more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(D). Support is considered "token" when "the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

An adult parent is presumed to know that he or she has a duty to provide support. Tenn. Code Ann. § 36-1-102(1)(H); *In re Braxton M.*, 531 S.W.3d 708, 724 (Tenn. Ct. App. 2017). A parent may assert, as an affirmative defense, that the failure to provide financial support was not willful. Tenn. Code Ann. § 36-1-102(1)(I) ("The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure."). However, the parent bears "'the burden of proof that the failure to . . . support was not willful' and must establish the lack of willfulness by a preponderance of the evidence." *In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at *8 (Tenn. Ct. App. July 22, 2020) (quoting Tenn. Code Ann. § 36-1-102(1)(I)). Mother pled no such affirmative defense in her Answer. Accordingly, willfulness is not at issue.

The trial court stated that it found "clear and convincing evidence, that the proof in the record establishes that the mother's and father's parental rights to the [C]hild should be terminated on the basis of Tenn. Code Ann. § 36-1-113(g)(1) for abandonment." The Court found that Mother had "failed in any way to provide any support for four (4) consecutive months prior to the filing of this petition."

Petitioner, Vickie C., stated in her affidavit in support of the motion for summary judgment that Mother "has not paid [C]hild support for [the Child] since he was placed into our care." Furthermore, in Mother's response to the request for admissions, Mother admitted that she did not provide any monetary support for the benefit of the Child in September 2019, October 2019, November 2019, December 2019, or January 2020. Mother also admitted that she was not disabled or unable to be gainfully employed.

Based on the foregoing we hold that the trial court's findings on this ground are supported by a preponderance of the evidence, which clearly and convincingly establish this ground. Accordingly, we affirm the trial court's ruling that Mother abandoned the Child by failing to support him during the relevant period.

2.  Abandonment by Failure to Visit

The trial court found that Mother abandoned the Child by failing to visit him pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(i). More specifically, the court found that Mother had "failed in any way to actively visit this [C]hild or make even token visitation with this child even though [she was] afforded that opportunity." Mother contends the evidence did not clearly and convincingly establish this ground.

Parental rights can be terminated for abandonment, as that term is defined in Tennessee Code Annotated § 36-1-102. *See* Tenn. Code Ann. § 36-1-113(g)(1). One form of abandonment is failure to visit, which occurs when a parent, "for a period of four (4) consecutive months, [fails] to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Visitation is considered "token" when "the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

As with support, a parent's assertion that the failure to visit was not willful constitutes an affirmative defense. Tenn. Code Ann. § 36-1-102(1)(I) ("The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure."). However, the parent bears "'the burden of proof that the failure to visit . . . was not willful' and must establish the lack of willfulness by a preponderance of the evidence." *Id.* Mother pled no such affirmative defense in her Answer. Accordingly, willfulness is not at issue.

In response to Petitioners' request for admissions, Mother admitted that she did not visit the Child in September 2019, October 2019, November 2019, December 2019, or January 2020. Accordingly, we affirm the trial court's ruling that Mother abandoned the Child by failing to visit him during the relevant time period.

## B. Persistence of Conditions

The trial court found there was clear and convincing evidence to establish the ground of persistence of conditions. Mother contends the evidence did not clearly and convincingly establish this ground.

Under Tennessee Code Annotated § 36-1-113(g)(3), parental rights may be terminated when a child has been removed from the parent's custody for six months as a result of an adjudication of dependency and neglect and three factors exist:

(i)     The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent . . . , or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and
>
> (iii) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home . . . .[5]

The purpose of this ground is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010) (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)), *overruled on other grounds by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). As the statute prescribes, "[a] parent's continued inability to provide fundamental care to a child . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re Dakota C.R.*, 404 S.W.3d 484, 499 (Tenn. Ct. App. 2012) (quoting *In re A.R.*, 2008 WL 4613576, at *20). Further, "[w]here . . . efforts to provide help to improve the parenting abilities, offered over a long period of time, have proved ineffective, the conclusion that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.*

As noted earlier, the Child, who was born in March 2018, was removed from Mother the day after birth, when DCS received a child safety referral from the hospital that Mother tested positive for subutex/suboxone upon her admission. Further, during the interview with a DCS case manager, Mother reported that she used illegal substances during her pregnancy, including Neurontin, opiates, and methamphetamine. Shortly thereafter, the Child was placed with the paternal grandparents, Petitioners, who have cared for the Child ever since.

Petitioner, Vickie C., stated in her affidavit that Mother had not made an adjustment of circumstances, conduct, or conditions so as to make it safe and in the Child's best interest to be with Mother. She further declared that Mother's environment and lifestyle are "not healthy and safe for a child, due to criminal activity and the use of alcohol and/or controlled substances or analogues which render [Mother] consistently unable to care for the child." She insisted that Mother was unable and unwilling to provide the Child "with safe and stable care and supervision."

In her response to Petitioners' interrogatories, Mother explained that she had been homeless until she went to a treatment center on November 1, 2019. Mother subsequently resided at Rest Stop Ministries from December 2019 until April 23, 2020. Mother explained that she worked at a Kentucky Fried Chicken from December 2017 until July

---

[5] Tennessee Code Annotated § 36-1-113(g)(3) requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550.

2018 and stated that, at the time the interrogatories were answered, she was looking for employment. Mother explained that she received food stamps in 2019 and 2020 and had a Knoxville Community Development Corporation voucher for housing from 2018 until April 2019. Mother admitted that she was arrested in 2018 and 2019 for theft charges. In her response to the request for admissions, Mother admitted that she never furnished proof of a legal source of income, clean drug screens, or adequate housing for the Child.

The trial court found that Mother failed to show any proof that she had obtained any adequate housing and had failed to show any proof of a legal income. The court noted that Mother never "provided to the Juvenile Court or to this Court, any evidence that [she] ever started, much less completed, the tasks that appear in the Juvenile Court's orders." Thus, the court concluded that the conditions that led to the Child's removal would not be remedied so that the Child could be safely returned to the parents in the near future. The trial court stated:

> The child has been placed in a safe and stable home for the entirety of his life with the grandparents and the continuation of the parent and child relationship diminishes the child's chances of integration into a permanent home. Further the Court finds that return of the child to [Mother] would be substantially detrimental to the child both physically and psychology.

Taking all of the above into consideration, we affirm the trial court's finding that this ground was established by clear and convincing evidence.

## C. Severe Child Abuse

The trial court found that this ground had been proven based on an order entered on August 9, 2019, pursuant to which the Knox County Juvenile Court found that Mother committed severe child abuse as defined by Tennessee Code Annotated § 36-1-113(g)(4). Mother did not appeal that decision.

Under Tenn. Code Ann. § 36-1-113(g)(4), a ground exists for terminating a parent's rights if the parent "has been found to have committed severe child abuse as defined in § 37-1-102, **under any prior order of a court**." (Emphasis added). The order need not "have any specific temporal proximity or nexus to the current child at issue or the proceedings currently being adjudicated." *In re I.E.A.*, 511 S.W.3d 507, 516 (Tenn. Ct. App. 2016).

Accordingly, we affirm the trial court's ruling on this ground.

## D. Failure to Manifest an Ability & Willingness

Under Tennessee Code Annotated § 36-1-113(g)(14), a parent's rights may be terminated if the parent (1) "failed to manifest, by act or omission, an ability and

willingness to personally assume legal and physical custody or financial responsibility of the child;" and (2) "placing the child in the [parent]'s legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Each element must be proven by clear and convincing evidence. *In re Maya R.*, No. E2017-01634-COA-R3- PT, 2018 WL 1629930, at \*7 (Tenn. Ct. App. Apr. 4, 2018).

"If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied." *In re Neveah M.*, 614 S.W.3d 658, 677 (emphasis omitted) (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at \*13 (Tenn. Ct. App. June 20, 2018)). The second prong is satisfied if the risk of harm is "a real hazard or danger that is not minor, trivial, or insignificant" and is "more than a theoretical possibility." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001).

The trial court found there was clear and convincing evidence to support termination of Mother's parental rights on this ground. The court stated that Mother:

> failed to manifest by any act, any ability, or willingness to personally assume legal or physical custody or financial responsibility for this child and the child has been placed in the physical and legal custody of the grandparents and to remove the child from the custody of those grandparents would pose a risk of substantial harm both physically, psychologically, and in other ways to the welfare of this child. Additionally, the Court notes that the parents have failed to appear here for this hearing. [Mother has] failed to maintain communication with their counsel even though the mother has communicated with her counsel recently. During the entire pendency of this litigation, she has made little effort to communicate with her counsel and find out what is going on or to actively participate in this litigation. Thus, the Court is of the opinion that the mother is not sufficiently concerned for the interest of the child or she would have been more actively involved in these proceedings. It is not her counsel's responsibility to try to reach out to her, but if the mother had any intention of having any kind of relationship with her child she would have clearly attempted to maintain communication with her counsel and she has failed to do that.

Notably, each of the two elements required to establish this ground "must be proven by clear and convincing evidence." *In re Maya R.*, 2018 WL 1629930, at \*7. Here, however, the trial court did not make a specific finding that Petitioners had proven by clear and convincing evidence that placing the Child in Mother's custody would pose a risk of substantial harm to the physical or psychological welfare of the Child. Moreover, we "may not conduct de novo review of the termination decision in the absence of such findings." *In re Carrington H.*, 483 S.W.3d at 523 (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142,

151, n. 15 (Tenn. Ct. App. 2007)). Accordingly, we reverse the trial court's finding that the ground codified at Tennessee Code Annotated § 36-1-113(g)(14) was established.

Nevertheless, because other grounds for termination were established, we shall now conduct the best interest analysis.

## V.    BEST INTEREST ANALYSIS

Mother contends the trial court erred by finding that it was the Child's best interest for her parental rights to be terminated.

Tennessee Code Annotated § 36-1-113(i) identifies factors to be considered when analyzing whether termination of parental rights is in a child's best interest; however, these "factors are illustrative, not exclusive," and the parties are free to offer proof of any other relevant factor to the analysis.[6] *In re Gabriella D*., 531 S.W.3d 662, 681 (Tenn. 2017). In *In re Gabriella D.*, the Tennessee Supreme Court summarized the law pertaining to this analysis:

> Facts considered in the best interests analysis must be proven by a preponderance of the evidence, not by clear and convincing evidence. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. When considering these statutory factors, courts must remember that the child's best interests are viewed from the child's, rather than the parent's, perspective. Indeed, a focus on the perspective of the child is the common theme evident in all of the statutory factors. When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child.
>
> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. Simply put, the best interests analysis is and must remain a factually intensive

---

[6] The petition at issue were filed prior to April 22, 2021, at which time Tennessee Code Annotated § 36-1-113(i) identified nine factors for consideration. The statute was subsequently amended and it now includes additional factors that should be considered, if relevant. *See* 2021 Pub. Acts, c. 190, § 1, eff. Apr. 22, 2021. Because the amended statute applies only to petitions for termination filed on or after April 22, 2021, the new factors do not apply to the present case.

undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated.

531 S.W.3d at 662.

"The child's best interests must be viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005) (citations omitted). "When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child[.]" Tenn. Code Ann. § 36-1-101(d). The trial court set forth findings of fact regarding the factors it deemed applicable, and we review those findings below.

### 1. Adjustment of Circumstance

The first factor to be considered is "[w]hether the parent . . . has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian." Tenn. Code Ann. § 36-1-113(i)(1).

The trial court found that Mother has not "attempted to be part of society as we know it," instead choosing to isolate herself from the Child and the evidence does not preponderate against this finding. Accordingly, we agree with the trial court that this factor weighs in favor of termination.

### 2. Lasting Adjustment

The second factor to be considered is "[w]hether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible." Tenn. Code Ann. § 36-1-113(i)(2).

The trial court found that this factor favored termination of Mother's parental rights. We respectfully disagree because there is insufficient evidence to establish that any "social services agencies" assisted Mother. Thus, we find that this factor does not weigh in favor of termination.

### 3. Regular Visitation or Contact

The third factor to be considered is "[w]hether the parent . . . has maintained regular visitation or other contact with the child." Tenn. Code Ann. § 36-1-113(i)(3).

The trial court found it undisputed that Mother failed to maintain visitation or any type of meaningful contact with the Child. The evidence does not preponderate against these findings. Accordingly, we agree with the trial court that this factor weighs in favor of termination.

#### 4. Meaningful Relationship

The fourth factor to be considered is "[w]hether a meaningful relationship has otherwise been established between the parent . . . and the child." Tenn. Code Ann. § 36-1-113(i)(4).

The trial court determined that Mother had not attempted to establish any kind of relationship with the Child, much less a meaningful one. The court also determined that Mother is not local to the Child and does not attempt to communicate with the Child or Petitioners. The evidence does not preponderate against these findings. Accordingly, we agree with the trial court that this factor weighs in favor of termination.

#### 5. Change of Caretakers and Physical Environment

The fifth factor to be considered is "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition." Tenn. Code Ann. § 36-1-113(i)(5).

The trial court found that taking the Child away from Petitioners would severely affect the Child's emotional, psychological, and physical health. The court found that the Child had developed a strong bond with Petitioners and that taking the Child away from Petitioners would have a severe negative impact on the Child.

After careful review of the record, we have determined that the evidence does not preponderate against the trial court's findings. Accordingly, we agree with the trial court that this factor weighs in favor of termination.

#### 6. Abusive Behavior

The sixth factor to be considered is "[w]hether the parent . . . , has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." Tenn. Code Ann. § 36-1-113(i)(5).

As previously discussed, the Juvenile Court found the Child to be drug exposed at birth because of Mother's drug dependency throughout her pregnancy and made a finding that the Child was dependent and neglected. Moreover, Mother was found to have severely abused the Child, as defined in Tennessee Code Annotated § 36-1-113(g)(4), by a prior order of a court. For these reasons, we agree with the trial court that this factor weighs in favor of terminating Mother's parental rights.

#### 7. Physical Environment of Parent's Home

The seventh factor to be considered is:

[w]hether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner.

Tenn. Code Ann. § 36-1-113(i)(7).

The trial court explained that there is no proof that Mother has a home for the Child or herself. It further reasoned that, because of Mother's history of substance abuse, the environment would not be safe and stable. The court stated, "the only conclusion the Court can reach is that no healthy and safe home can be available from [Mother] for this child." The evidence does not preponderate against these findings. Accordingly, we agree with the trial court that this factor weighs in favor of termination.

## 8. Mental and Emotional State

The eighth factor to be considered is "[w]hether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child." Tenn. Code Ann. § 36-1-113(i)(8).

There was no evidence presented by either side as to this factor, so the trial court made no findings regarding this factor, and we agree with the trial court's decision that this factor is not applicable.

## 9. Child Support

The ninth factor to be considered is "[w]hether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101." Tenn. Code Ann. § 36-1-113(i)(9).

The evidence clearly established that Mother made no support payments for the Child. Thus, we agree with the trial court that this factor weighs in favor termination.

## IN CONCLUSION

While we respectfully reverse the trial court's finding on one ground, we affirm the judgment of the trial court in all other respects, and this matter is remanded with costs of appeal assessed against Tesla F.

_____
FRANK G. CLEMENT JR., P.J., M.S.